# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

YVONNE GRIFFIN o/b/o C.T.M.,

Plaintiff,

v.                                                   5:24-CV-1044
                                                     (GTS/MJK)

SYRACUSE CITY SCHOOL DISTRICT,

Defendant.

---

YVONNE GRIFFIN o/b/o C.T.M., Plaintiff, pro se

MITCHELL J. KATZ, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

## TO THE HONORABLE GLENN T. SUDDABY, U.S. DISTRICT JUDGE:

The Clerk has sent to the court for review a civil rights complaint pursuant to 42 U.S.C. § 1983, filed by pro se plaintiff Yvonne Griffin, on behalf of her infant daughter, C.T.M.  (Dkt. No. 1) ("Compl.").  In addition to the complaint, plaintiff also filed an application to proceed in forma pauperis ("IFP"), a motion for appointment of counsel, and a motion to obtain an ECF login and password.  (Dkt. Nos. 2, 3, 4).

## I.    IFP Application

Plaintiff Ms. Griffin declares in her IFP application that she is unable to pay the filing fee.  (Dkt. No. 2).  After reviewing her application, this court finds that Ms. Griffin is financially eligible for IFP status.

1

In addition to determining whether a plaintiff meets the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

Notwithstanding the general rule as enumerated above, this case presents a more complicated set of circumstances, to the extent that Ms. Griffin, a non-attorney, is attempting to bring this action on behalf of her minor child.  Because the court may not "make a merits determination of claims filed on behalf of a minor or incompetent person who is not properly represented," *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (citations omitted), resolution of the counsel issue in this matter is necessary before the court can assess the sufficiency of the allegations set forth in plaintiff's complaint.

## II.   **The Complaint**

Although not explicitly set forth in the complaint, it appears that the infant plaintiff C.T.M. was a student enrolled with the defendant Syracuse City School District at the time of the underlying alleged events.  In September 2023, C.T.M.'s medical provider "took [C.T.M.] out of school" in relation to a pregnancy.  (Compl. at 2). Plaintiff "went to the main office and obtain[ed] a medical homebound app[lication] for

2

[C.T.M.]," which application was then "filled out" by C.T.M.'s medical provider. (*Id.*).

Although it is unclear who,[1] plaintiff maintains that someone (other than herself or

C.T.M.), returned the application to the school principal.  (*Id.*). Plaintiff maintains that

"[h]e[2] never turned it in. He in fact said she didn't need it." (*Id.*). C.T.M. subsequently

gave birth, and was released back to school on November 6, 2023 by her medical

provider. (*Id.*).  Plaintiff states that C.T.M. "received NO EDUCATION, NO

CLASSWORK, NO HOMEWORK, NO TUTORIAL, NO BOOKS, NO TEACHER."

(*Id.*).  "Nothing is on record" with the defendant "except [C.T.M.'s] return to school

paperwork."  (*Id.*).

Plaintiff next alleges a separate incident in which the defendant school district

"created an unsafe educational setting" for two of her minor children.[3]  (Compl. at 3).

Plaintiff states that this was due to a "disagreement in the amount of time the [defendant

school district] was taking to provide transportation for [her] children who were

---

[1] Plaintiff has redacted the name of the individual who is alleged to have returned C.T.M.'s homebound application to the school principal, presumably because that individual is a minor. (Compl. at 2).  It appears that this individual's name starts with an "M," on which basis the court concludes that it is not C.T.M.

[2] It is unclear whether plaintiff is referring to the school principal, or to "M."

[3] It is unclear whether plaintiff is referring to C.T.M. and another one of her children, or two children other than C.T.M.

homeless McKinney Vento[4] children[.]"  (*Id.*).  Plaintiff then claims that the defendant

school district "took out a BAN LETTER not allowing [her] to call the school," and

preventing plaintiff from having contact with even the school nurse "without prior

consent from Dr. Joshua Beerdall . . . ."  (*Id.*).

Plaintiff further alleges that in January 2024, "both [her] daughters had told [her]

that a group of girls were planning on jumping [her] daughter[.]"  (Compl. at 3).

Plaintiff "called [the school] the next day and they wouldn't speak to [her]."  (*Id.*).  She

also called Dr. Beerdall, but he was on vacation.  (*Id.*).  Plaintiff asked one of his

secretaries to "have one of [Dr. Beerdall's] coworkers call [the school] and speak to

them about this."  (*Id.*).  Plaintiff was thereafter called by her children, and had to

"rush" an event she was holding because she was "under the impression the fight

happened."  (*Id.*).  Plaintiff went to the school and "went live on [her] social media

because the school refused to give [her her] children."  (*Id.*).  Plaintiff alleges that "the

fight happened 8 minutes AFTER [she] arrived to get both [her] children."  (*Id.*).  She

further states that "ultimately the [defendant school district], their law firm, [plaintiff]

and [the involved child] went into a settlement waiver agreement."  (*Id.*).  Plaintiff

---

[4]The McKinney-Vento Act is a federal law providing certain rights to children who lack a "fixed, regular, and adequate nighttime residence," including transportation to and from school.  *See* https://www.nysed.gov/essa/mckinney-vento-homeless-education (last visited Sept. 6, 2024).

claims that "she" did not receive an education from the January 2024 incident until March 2024, "when the waiver was signed."  (*Id.*).

## III.   **Plaintiff's Representation of C.T.M.**

"A litigant in federal court has a right to act as his or her own counsel." *Cheung v. Youth Orchestra Found.*, 906 F.2d 59, 61 (2d Cir. 1990) (citing 28 U.S.C. § 1654). "The statutory right to proceed pro se reflects a respect for the choice of an individual citizen to plead his or her own cause." *Id*. However, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id*. This is because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions. *Id*. (citing Fed. R. Civ. P. 17(b)).

Minor children "are entitled to trained legal assistance so their rights may be fully protected." *Cheung v. Youth Orchestra Found.*, 906 F.2d at 61. Thus, the "court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child."[5] *Fauconier v. Comm. on Special Educ.*, No. 02 Civ. 1050, 2003 WL 21345549, at *1 (S.D.N.Y. June 10, 2003), *aff'd sub nom*. *Fauconier v. Comm. on Special Educ.*, 112 F. App'x 85 (2d Cir. 2004).

---

[5] The Second Circuit has carved out limited exceptions to this general rule, including for claims filed on behalf of minors under the Individuals with Disabilities Education Act ("IDEA") and actions relating to social security benefits.  Liberally construed, plaintiff's complaint does not fall within any of the noted, limited exceptions.

In light of this rule, and to the extent this court interprets plaintiff's allegations to contain claims exclusively concerning C.T.M.'s rights, plaintiff may not appear pro se on behalf of C.T.M.

## IV.   **Motion for Counsel**

Plaintiff has moved for the appointment of pro bono counsel. As previously set forth, the court construes plaintiff's allegations to be limited to claims concerning C.T.M.'s rights.  Accordingly, the court considers whether the appointment of counsel is warranted in order for Ms. Griffin to bring this action on behalf of C.T.M.

Pursuant to 28 U.S.C. § 1915 (e)(1), courts may "request an attorney" to represent someone unable to afford counsel. Courts possess broad discretion when determining whether appointment is appropriate, "subject to the requirement that it be 'guided by sound legal principle.' " *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting *Jenkins v. Chemical Bank*, 721 F.2d 876, 879 (2d Cir. 1983)). The Second Circuit has listed several factors to be looked at in making the determination of whether to appoint counsel, including a threshold determination of whether "the indigent's position seems likely to be of substance."  *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). A court "may properly deny a motion to appoint counsel – even for a minor or incompetent person – when it is clear that no substantial claim might be brought on behalf of such a party." *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (internal quotation marks and citations

6

omitted); *see also Palumbo v. Ross,* No. 07-CV-5378, 2009 WL 10708951, at *3 (E.D.N.Y. Feb. 19, 2009) ("There is no right to be appointed counsel in a civil matter, even where the indigent is an infant."). "[I]n determining whether appointment of counsel is necessary in a case involving a party who is unable to represent himself [or herself] because he [or she] is a minor . . . , the court should consider the fact that, without appointment of counsel, the case will not go forward at all." *Id*. However, even if the failure to appoint counsel might result in a minor's claims being dismissed, the appointment of counsel is not required when it is clear that no substantial claim might be brought on behalf of the minor. *Id*.; *see Cheung*, 906 F.2d at 62.

If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d at 61-62). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge v. Police Officers*, 802 F.2d at 61).

At the outset, plaintiff's motion to appoint counsel is denied for failure to demonstrate her inability to obtain legal counsel for this case. The local rules of the

Northern District of New York state that any application by a pro se party for the appointment of counsel "shall include a form affidavit stating the party's efforts to obtain an attorney by means other than appointment . . . ." N.D.N.Y.L.R. 83.2(b)(1). The form application provided by Ms. Griffin directs the movant to not only list the specific attorneys she has contacted in her effort to obtain counsel, but to further attach to the motion correspondence that she has received from those attorneys. (Dkt. No. 3). Ms. Griffin did not provide this information. (*Id.*). Instead, she states that she has contacted "several attorneys in the Syracuse area for years and the amount they are requesting even for a consult is high." (*Id.*). Plaintiff's representation is confusing, as the underlying events giving rise to the alleged allegations took place less than a year prior to the date that she filed the complaint. On this basis, the court has considerable doubts as to whether serious efforts have been taken to obtain an attorney on behalf of C.T.M. in this specific matter.

Furthermore, based on the allegations as pled in the complaint, the claims asserted on behalf of C.T.M. do not seem likely to be of substance – to the extent such a determination could be rendered at this early stage of the litigation. As a general matter, "counsel is not appointed in many cases, particularly where, as here, there is not a fully developed record from which an assessment of the merits of the case can be made." *LeClair v. Vinson*, No. 1:19-CV-28 (BKS/DJS), 2019 WL 1300547, at *4 (N.D.N.Y. Mar. 21, 2019), *report and recommendation adopted*, 2019 WL 2723478

(N.D.N.Y. July 1, 2019) (cautioning non-attorney parent as to reality of appointment of counsel for minor plaintiff); *see also Harmon v. Runyon,* No. 96 Civ. 6080, 1997 WL 118379 (S.D.N.Y. Mar. 17, 1997) (denying plaintiff's request for counsel for failure to meet the threshold requirement set forth in *Hodge* because plaintiff "presented no evidence whatever to support her claims regarding defendant's allegedly improper actions."). Here, the complaint has not yet been served on the proposed defendant, and they have not had the opportunity to respond to plaintiff's allegations. Therefore, the court is limited in its consideration of the motion to the allegations in plaintiff's complaint.

The court is mindful that this case cannot proceed if appointment of counsel is not made, unless counsel is otherwise secured on behalf of C.T.M. However, the court also appreciates that the statute of limitations is tolled until plaintiff reaches the age of majority, which, based on the complaint, does not appear to be far-removed.[6] Accordingly, in consideration of all the above factors, the court recommends that appointment of counsel be denied and the complaint be dismissed without prejudice. *See Cheung v. Youth Orchestra Found., Inc*., 906 F.2d at 62 ("If [the non-attorney parent] does not retain counsel and if the district court declines to appoint counsel, the complaint should be dismissed without prejudice."); *Hughes v. Callahan*, No. 97-CV-

---

[6] The complaint alleges that in 2023, C.T.M. was a student at the "PSLA," or the Public Service Leadership Academy, a high school operating in the Syracuse City School District.

5652, 1998 U.S. Dist. LEXIS 14840, at *1 (E.D.N.Y. Aug. 3, 1998) ("Accordingly, the Court must either appoint counsel for the child in this case, or dismiss the case without prejudice."). If the district court accepts this recommendation, and plaintiff wishes to proceed with this action, she is encouraged to explore the possibility of representation by one of the various legal aid and/or lawyer referral services in this district, contacts for which can be found on the district court's webpage.[7]

## V.   **Motion for ECF Login/Password**

"Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice." *Amato v. McGinty*, No. 1:17-CV-593(MAD/ATB), 2017 WL 9487185, at *11 (N.D.N.Y. June 6, 2017), *report and recommendation adopted*, 2017 WL 4083575 (N.D.N.Y. Sept. 15, 2017).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion to proceed IFP (Dkt. No. 2) be **GRANTED**, and it is

**RECOMMENDED**,[8] that the district court **DENY** plaintiff's motion for the appointment of counsel (Dkt. No. 3), and it is

---

[7]*See* https://www.nynd.uscourts.gov/legal-aid-referral-services.

[8] Ordinarily, motions to appoint counsel fall within the scope of the magistrate judges' jurisdiction, due to their nondispositive nature. *See* 28 U.S.C. § 636(b)(1)(A). However, in light of the dispositive effect of a decision denying the appointment of counsel in a case such as this, the court, in an abundance of caution, addresses plaintiff's motion to appoint counsel in a report-recommendation.

**RECOMMENDED,** that the district court **DISMISS** the complaint (Dkt. No. 1) in its entirety, without prejudice, but without leave to replead until C.T.M. is properly represented by counsel or reaches the age of majority, and it is

**ORDERED,** that plaintiff's motion to obtain ECF privileges (Dkt. No. 4) is **DENIED,** and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.[9]

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 16, 2024

Mitchell J. Katz
U.S. Magistrate Judge

---

[9] The Clerk shall also provide plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

KeyCite Overruling Risk - Negative Treatment

Overruling Risk  Exxon Mobil Corp. v. Saudi Basic Industries Corp.,  U.S., March 30, 2005

2003 WL 21345549

Only the Westlaw citation is currently available.

United States District Court,

S.D. New York.

Richard FAUCONIER, Plaintiff,

v.

COMMITTEE ON SPECIAL EDUCATION, District 3, New York City Board of Education, Defendant.

No. 02 Civ.1050 RCC.

|

June 10, 2003.

**Synopsis**

Noncustodial parent sued special education committee under Individuals with Disabilities Act (IDEA), challenging denial of mainstream educational placement for student. Committee moved to dismiss. The District Court, Casey, J., held that: (1) nonattorney parent could not proceed pro se, representing interests of student under IDEA, and (2) Rooker-Feldman doctrine barred suit.

Case dismissed.

West Headnotes (2)

---

**[1]** **Infants**    Schools and education

Nonattorney parent could not proceed pro se to represent interests of student in suit under Individuals with Disabilities Education Act (IDEA) challenging school committee's decision to retain student in special private education setting rather than mainstreaming him. 20 U.S.C.A. § 1400 et seq.

12 Cases that cite this headnote

---

**[2]** **Courts**    Constitutional questions, civil rights, and discrimination in general

Rooker-Feldman doctrine, precluding federal court review of state court final judgment,

barred suit under Individuals with Disabilities Education Act (IDEA) by noncustodial parent challenging school district's denial of mainstream educational placement for disabled student; claimant was trying to obtain federal court reversal of state court determination that he could not represent student's interests under IDEA, because he was not custodial parent. 20 U.S.C.A. § 1400 et seq.

---

OPINION & ORDER

CASEY, J.

**I. Background**

**\*1** Pro se Plaintiff Richard Fauconier ("Plaintiff") initiated this action on behalf of himself and his son, M.F., [1] against the Committee on Special Education of District 3 of the New York City Board of Education ("Defendant") alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq. On July 24, 2002, Defendant filed a motion to dismiss the complaint. By Report and Recommendation ("Report") Judge Ronald Ellis recommended that Defendant's motion to dismiss be granted and that Plaintiff's complaint be dismissed without prejudice. Thereafter, the Plaintiff filed timely objections to the Report. Accordingly, the Court reviews the matter de novo. Fed.R.Civ.P. 72(b).

---

[1]  In the interests of privacy, the child will be referred to in these proceedings as "M.F."

---

The Plaintiff is the non-custodial parent of M.F., who has been diagnosed with Attention Deficit Hyperactive Disorder. M.F. is a student at a private institution for emotionally, physically and mentally challenged students. Due to his disability, public funds are used to pay for M.F.'s education.

On five separate occasions, from August, 1994 to March, 2001, M.F. was evaluated by District 3. As a result of each evaluation, District 3 found it to be in M.F.'s best interest that he continue to attend a private educational institution. The Plaintiff, however, sought to have his son placed in a mainstream school. District 3 denied Plaintiff's request for a reevaluation and transfer of M.F. and declined to

include Plaintiff as a member of M.F.'s IEP team. In reaching these decisions, District 3 cited Plaintiff's status as the non-custodial parent.

As a result, on November 5, 2001, Plaintiff filed an order to show cause in an Article 78 Special Proceeding in the State of New York Supreme Court, New York County. Plaintiff sought: (1) a reevaluation of M.F.; (2) placement of M.F. in a mainstream academic setting with support services; (3) permission for M.F. to take the standardized testing for fourth grade math and English; and (4) a position on M.F.'s IEP team with full access to his educational records. By final disposition, the state court denied Plaintiff's claims in light of his non-custodial status. Plaintiff then commenced this federal action on February 11, 2002.

## II. Discussion

 **[1]**    In his Report, Judge Ellis recommended that Plaintiff's complaint be dismissed without prejudice on the ground that under *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), Plaintiff could not proceed *pro se* to litigate M .F.'s interests. For the following reasons, the Court concludes that pursuant to its affirmative duty to enforce the *Cheung* rule, the claims that Plaintiff brings on behalf of his son must be dismissed. Additionally, the Court finds that Plaintiff's remaining claims brought on his own behalf are barred by the *Rooker–Feldman* doctrine.

### A. Representing Children Pro Se

The Second Circuit has made clear in *Cheung* that a court has an affirmative duty to enforce the rule that a non-attorney parent must be represented by counsel when bringing an action on behalf of his or her child. *See id.* at 61. In fact, the Second Circuit in *Cheung* enforced this affirmative duty prior to addressing the jurisdictional issues present in that case. This Court therefore has a duty to enforce the *Cheung* rule, for " '[t]he infant is always the ward of every court wherein his rights or property are brought into jeopardy, and is entitled to the most jealous care that no injustice be done to him." '
*Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 125 (2d Cir.1998) (quoting *Johns v. County of San Diego,* 114 F.3d 874, 877 (9th Cir.1997). On the other hand, a parent is entitled to represent himself when claiming that his own rights under the IDEA have been violated. *Id.* at 126. Here, Counts One and Two of Plaintiff's Amended Complaint are claims that exclusively concern M.F.'s rights. Additionally, Counts Three and Five concern both Plaintiff's and M.F.'s rights. Under *Cheung,* however, Plaintiff may not litigate the interests of

M.F. Therefore, at the outset the Court dismisses Counts One and Two of Plaintiff's complaint. Counts Three and Five are dismissed to the extent that they concern M.F.'s rights. Thus, the remaining claims not barred by *Cheung* are Plaintiff's record-access claim, Plaintiff's claim that he be permitted a seat on M.F.'s IEP team, and his claim that Defendant has violated his Fourteenth Amendment rights.

### B. Rooker–Feldman

 **\*2**  **[2]**    The *Rooker–Feldman* doctrine holds that a party may not take an appeal of a state court decision to a federal court. Plaintiff, however, requests that this Court do precisely that.

Plaintiff's claims that he be permitted access to M.F.'s educational records and that he be given a seat on M.F.'s IEP team were precisely the subject of Plaintiff's order to show cause brought in state court. Therefore, as discussed below, under the *Rooker–Feldman* doctrine these claims may not be re-litigated here. Accordingly, the Court finds that it lacks subject matter jurisdiction over these claims.

A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction and therefore may be raised at any time by either party or *sua sponte* by the Court. *Moccio v. New York State Officers of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996). Generally speaking, the *Rooker–Feldman* doctrine directs that a federal district court lacks authority to review the final judgment of state courts in judicial proceedings. *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir.2002). The doctrine is derived from two Supreme Court decisions. In the first, *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), the Court held that appeals from state court judgments are reserved to the Supreme Court, and therefore the lower federal courts lack jurisdiction to entertain such appeals. Sixty years later, in *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Court extended *Rooker* by barring reconsideration of claims that were implicitly decided by the state court as well. In crafting the "inextricably intertwined" test, the Court held:

> If the constitutional claims presented to a United States district court are inextricably intertwined with the state court's denial in a judicial proceeding ... then the district court

is in essence being called upon to review the state-court decision. This the district court may not do.

*Feldman,* 460 U.S. at 483–84 n. 16.

Under the *Rooker–Feldman* doctrine, the Court may address two questions: (1) whether a party is attempting to directly challenge a state court decision in federal court and (2) whether such a suit is inextricably intertwined with the previous state court proceedings. Given that a challenge under the *Rooker–Feldman* doctrine as an inquiry into the Court's subject matter jurisdiction, the Court may consider materials extrinsic to the complaint. *Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002). The Court now turns to this inquiry.

In his attempt to appeal the decision of the state court to the federal courts, Plaintiff asserts that this action contains claims under the IDEA that were never raised in the state court proceeding. *See* Plaintiff's Memorandum of Law ¶ 38. The Court, however, finds Plaintiff's assertion disingenuous. In his November 15, 2001 Affidavit filed in New York Supreme Court, Plaintiff himself stated that his cause of action was partly "governed by the federal Individuals with Disabilities Education Act (IDEA)." Moreover, in state court Plaintiff asserted that despite the fact that he is M.F.'s non-custodial father, *Doe v. Anrig,* 651 F.Supp. 424 (D.Mass.1987), supported his claim that he could still assert claims under the IDEA. *See* Plaintiff's Nov. 15, 2001 Aff. ¶ 7(i). Nevertheless, the state court concluded that because Plaintiff is not the custodial parent, he lacked decision making authority for M.F. *See* Ex. O to Am. Compl.

*3 On December 6, 2001 Plaintiff filed this action contending that the state court was insensitive to the facts forming the basis of his federal claims and that the state

court failed to protect his federal rights. Plaintiff's Amended Complaint asserts that the state court "made no mention of *Doe v. Anrig"* and that "apparently, no judicial notice is taken of cases in federal district courts such as *Doe v. Anrig,* and the educational system's escape of scrutiny is assured." Am. Compl. ¶¶ 33, 34. Accordingly, the Court finds that Plaintiff's pleadings demonstrate that he has brought this action because he is dissatisfied with the state court decision. In effect, Plaintiff is asking the Court to review the state court's determination that he lacks educational decision making authority because he is not the custodial parent. The *Rooker–Feldman* doctrine squarely bars a litigant from complaining of a result in state court by asking a federal court to entertain an appeal of that result. *See Kropelnicki,* 290 F.3d at 128. To consider Plaintiff's claims, the Court would be required to determine whether the IDEA protects the rights of both custodial and non-custodial parents, a question the state court has already ruled upon in this case. This type of request is squarely barred under the *Rooker–Feldman* doctrine. *See Corsini v. Ross,* 152 F.3d 917 (2d Cir.1998) ("[D]istrict courts 'do not have jurisdiction ... over challenges to state court decisions ... even if those challenges allege that the state court's action was unconstitutional .' ") (quoting *Feldman,* 460 U.S. at 486). Accordingly, the Court lacks subject matter jurisdiction in this case.

III. Conclusion
For the reasons stated above, under *Cheung* Plaintiff's claims brought on behalf of M.F. are dismissed. Additionally, Plaintiff's remaining claims pertaining to his rights under the IDEA are dismissed under the *Rooker–Feldman* doctrine. The Clerk of the Court is hereby directed to close the case.

**All Citations**

Not Reported in F.Supp.2d, 2003 WL 21345549

---

**End of Document**      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

112 Fed.Appx. 85
This case was not selected for
publication in the Federal Reporter.
United States Court of Appeals,
Second Circuit.

Richard FAUCONIER, Plaintiff–Appellant,

v.

COMMITTEE ON SPECIAL EDUCATION,
DISTRICT 3, NEW YORK CITY BOARD
OF EDUCATION, Defendant–Appellee.

No. 03–7793–CV.
|
Sept. 30, 2004.

**Synopsis**
**Background:** On behalf of himself and son, noncustodial
parent brought pro se action against special education
committee under Individuals with Disabilities Act (IDEA),
challenging denial of mainstream educational placement for
son. Committee moved to dismiss. The United States District
Court for the Southern District of New York, Casey, J., 2003
WL 21345549, dismissed complaint. Parent appealed.

**Holdings:** The Court of Appeals held that:

[1] parent, who was not attorney, could not assert claims on
son's behalf, and

[2] claims implicating parent's rights were barred by *Rooker-
Feldman* doctrine.

Affirmed.

West Headnotes (2)

[1]     **Education**  Judicial Review or Intervention
        **Infants**  Schools and education
        Nonattorney parent could not assert claims
        on behalf of son in action brought under
        Individuals with Disabilities Education Act
        (IDEA). Individuals with Disabilities Education

Act, § 601 et seq., as amended, 20 U.S.C.A. §
1400 et seq.

3 Cases that cite this headnote

[2]     **Courts**  Constitutional questions, civil
        rights, and discrimination in general
        To the extent that claims asserted by noncustodial
        father against special education committee
        pursuant to Individuals with Disabilities
        Education Act (IDEA) implicated father's own
        rights, they were barred by *Rooker-Feldman*
        doctrine, which generally barred federal court
        review of state-court judgments, inasmuch as
        any other outcome would presume that father
        possessed authority, as noncustodial parent, to
        litigate claims under IDEA on son's behalf,
        thereby calling into question validity of prior
        state-court determination holding otherwise.
        Individuals with Disabilities Education Act, §
        601 et seq., as amended, 20 U.S.C.A. § 1400 et
        seq.

1 Case that cites this headnote

**\*85** Appeal from the United States District Court for the
Southern District of New York (Casey, J.).

**\*86** UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED that the
judgment of the said district court be and it hereby is
AFFIRMED.

**Attorneys and Law Firms**

Richard Fauconier, Troy, NY, for Appellant, pro se.

Victoria Scalzo, Assistant Corporation Counsel, Corporation
Counsel, City of New York, New York, NY, for Appellees.

PRESENT: FEINBERG, CARDAMONE, and B.D.
PARKER, Circuit Judges.

SUMMARY ORDER

**\*\*1** Richard Fauconier, *pro se,* appeals the District Court's
dismissal of his complaint, in which he had alleged various
claims on behalf of his son as well as on his own behalf under

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* Familiarity with the underlying facts, procedural context, and specification of appellate issues is assumed.

We review *de novo* the District Court's dismissal of Fauconier's complaint. *Rombach v. Chang,* 355 F.3d 164, 169 (2d Cir.2004) (dismissal under Fed.R.Civ.P. 12(b)(6)); *see also Mackensworth v. S.S. Am. Merch.,* 28 F.3d 246, 252 (2d Cir.1994) (dismissal for lack of jurisdiction). Because "most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections,* 232 F.3d 135, 140 (2d Cir.2000).

[1]  [2]  To the extent Fauconier raised claims on behalf of his son, the claims were properly dismissed because, pursuant to *Cheung v. Youth Orchestra Found.,* 906 F.2d 59, 61 (2d Cir.1990), a federal court has an affirmative duty to enforce the rule that "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." To the extent Fauconier's claims implicated his own rights, they

were properly dismissed as barred by the *Rooker–Feldman* doctrine, because any other outcome would have presumed that Fauconier possessed the authority, as a non-custodial parent, to litigate claims under the IDEA on behalf of his son. Such a result would have called into question the validity of a prior state court determination holding otherwise. *See Phifer v. City of New York,* 289 F.3d 49, 55 (2d Cir.2002) (noting that the *Rooker–Feldman* doctrine "holds that inferior federal courts lack subject matter jurisdiction over cases that effectively seek review of judgments of state courts and that federal review, if any, can occur only by way of a certiorari petition to the Supreme Court") (citations and internal quotation marks omitted); *see also D.C. Ct. of App. v. Feldman,* 460 U.S. 462, 482–86 & n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

**\*\*2**  Accordingly, the decision of the District Court is AFFIRMED.

## All Citations

112 Fed.Appx. 85, 2004 WL 2278541, 193 Ed. Law Rep. 136

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Palumbo v. Ross, Not Reported in Fed. Supp. (2009)

2009 WL 10708951

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 17 of 49

2009 WL 10708951
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Robert PALUMBO, Noel Palumbo, Plaintiff,

v.

Robert ROSS, Marston Gibson, Vincent
Nicolosi, Charleen Rhindress, H&R Block
Financial Advisors, Inc., Defendants.

07-CV-5378 (JS)(ETB)
|
Signed 02/19/2009

**Attorneys and Law Firms**

For Plaintiffs: Robert Palumbo, Robert Palumbo, Pro Se, 456 Half Hollow Road, Dix Hills, NY 11746.

Noel Palumbo, Noel Palumbo, Pro Se.

For Defendants: Justice Robert, Ross, Referee, Marston C.D., Gibson, Ralph Pernick, Esq., New York State Attorney General, 200 Old County Road, Suite 460, Mineola, NY 11545-1403.

Vincent F., Nicolosi, Vincent F. Nicolosi, Esq., Nicolosi & Nicolosi, LLP, 111 Plandome Road, Manhasset, NY 11030.

Charleen Rhindress: No Appearance.

H&R Block, Financial, Advisors, Inc., Theodore Snyder, Esq., Krensbach & Snyder, P.C., One Exchange Plaza, 55 Broadway, Suite 1600, New York, NY 10006.

ORDER

Joanna Seybert, U.S.D.J.

**\*1**  On December 27, 2007, pro se Plaintiff Robert Palumbo ("Palumbo") filed a Complaint in this Court against Nassau County Supreme Court Justice Robert Ross ("Judge Ross"), Referee Marston C.D. Gibson ("Gibson"), Charleen Rhindress ("Rhindress"), Vincent F. Nicolosi, ("Nicolosi") and H&R Block Financial Advisors, Inc. ("H&R Block") (collectively, "Defendants"). On February 26, 2008, Palumbo filed an Amended Complaint (hereinafter referred to as the "Complaint") and added his daughter, Noel Palumbo, as an additional Plaintiff. [1] Pending before the Court is a motion

to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by Judge Ross and Referee Gibson (hereinafter the "Judicial Defendants"), a motion to dismiss pursuant to Rules 8, 9(b), and 12(b)(6) brought by Defendants Nicolosi and Rhindress, a motion to compel Plaintiff to arbitration brought by H&R Block, a motion to appoint counsel for Noel Palumbo, and finally, a motion to amend the Complaint. For the reasons stated below, the motions to dismiss are GRANTED, the motion to compel Plaintiff to arbitration is GRANTED, the motion to appoint counsel is DENIED, and the motion to amend is GRANTED in part and DENIED in part.

[1]  Because the Court dismisses Noel Palumbo's Complaint without prejudice, all citations to "Plaintiff" in this Order refer to Robert Palumbo.

BACKGROUND

The facts of this case are taken from the Complaint. In April of 2003, Plaintiff received a judgment of divorce from Rhindress. Although unclear from Plaintiff's Complaint, it appears that Judge Ross retained jurisdiction over certain ongoing issues concerning either Plaintiff's matrimonial action or custody issues pertaining to Noel Palumbo.

On or about December 21, 2007, Plaintiff allegedly received a phone call from Dave Andrews ("Andrews"), a representative of H&R Block, indicating that Plaintiff's retirement account at H&R Block had been sequestered. Andrews stated that he had an order signed by Defendant Gibson that authorized the sequestration. Plaintiff alleges that he did not consent to Gibsons' participation in the matter and that Gibson signed the order without providing Plaintiff with notice. The Complaint states that sequestration was unwarranted because Plaintiff did not owe any monies in child support or as a result of the divorce decree. Plaintiff further argues that his retirement account is covered by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq ("ERISA") and therefore Judge Ross and Gibson lacked jurisdiction to issue an order of sequestration.

At some point during the state court proceeding, Judge Ross issued an order enjoining Plaintiff from filing any new action in the court without first obtaining permission from Judge Ross. Plaintiff argues that this order unconstitutionally violates Plaintiff's access to the courts. Plaintiff seeks "injunctive relief, declaratory relief[,] and money damages in

Palumbo v. Ross, Not Reported in Fed. Supp. (2009)

2009 WL 10708951

excess of two million dollars" from Judge Ross. (Amended Complaint ("Comp.") p 5.)

**\*2** On April 11, 2008, Plaintiff filed an Order to Show Cause before this Court seeking an order enjoining Defendants from sequestering Plaintiff's retirement account pending the resolution of this case. On April 14, 2008, this Court denied Plaintiff's Order to Show Cause for failure to show a likelihood of success on the merits. Plaintiff appealed this Court's denial to the Second Circuit Court of Appeals. On September 29, 2008, the Court of Appeals dismissed Plaintiff's appeal because it lacked an arguable basis in law or in fact.

It is unclear what Plaintiff's cause of action is against Defendants Nicolosi, Rhindress, and H&R Block. As best as can be parsed from Plaintiff's Complaint, Plaintiff alleges that Defendant Nicolosi, counsel for Rhindress, improperly sought sequestration of Plaintiff's retirement fund to pay for his attorney's fees. Defendant Rhindress has contributed to this illegal sequestration by "allow[ing] her counsel to collect more than $600,000 in counsel fees." (Comp. P. 7.) Defendant H&R Block allegedly breached its fiduciary duty and interfered with Plaintiff's "legal and civil rights." According to Plaintiff, H&R Block's legal department "should know the law and understand that a state referee cannot sequester ERISA funds." (Id.)

The Judicial Defendants argue that the Complaint should be dismissed because Plaintiff fails to state a claim, Plaintiff cannot pursue an action on behalf of his daughter, and Plaintiff's arguments are barred by the Rooker-Feldman doctrine and absolute judicial immunity. Nicolosi and Rhindress move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6).[2] Finally, H&R Block moves to compel Plaintiff to arbitration.

[2] The Court notes that Rhindress and Nicolosi have not properly filed their motion to dismiss. Rhindress and her attorney have not cited to any case law, and in fact, failed to submit a memorandum of law in support of their motion. Their entire motion consists of a four-page affirmation submitted by Nicolosi, and a one-page affidavit signed by Rhindress. The Court will not take the time to ascertain what legal arguments Defendants intend to make, nor will it fill in the blanks and make arguments on behalf of counsel. Thus, the Court declines to address any arguments

that are not addressed whatsoever in Defendants' motion, such as, for example, Defendants' motion to dismiss pursuant to Rule 9(b).

DISCUSSION

I. Motion to Appoint Counsel
Plaintiff moves to appoint counsel on behalf of himself and on behalf of Noel Palumbo.

Pursuant to 28 U.S.C. § 1915(e)(1), courts may appoint an attorney to represent someone unable to afford counsel. Courts possess broad discretion when determining whether appointment is appropriate, "subject to the requirement that it be 'guided by sound legal principle.' " Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 171-72 (2d Cir. 1989) (quoting Jenkins v. Chemical Bank, 721 F.2d 876, 879 (2d Cir. 1983) ).

A. Motion to Appoint Counsel on Behalf of Noel Palumbo
The Court notes the "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 284 (2d Cir. 2005); see also Allen v. Mattingly, No. 08-CV-2003, 2008 U.S. Dist. LEXIS 48930 at *5 (E.D.N.Y. June 19, 2008) ("Generally, a parent who is not admitted to the bar cannot maintain an action pro se in federal court on behalf of his or her child."). Thus, if the Court declines to appoint counsel for Noel Palumbo, Plaintiff, as a non-attorney, will not be able to asserts claims on behalf of his infant daughter.

**\*3** District courts have the authority to appoint counsel on behalf of a minor child. "The determination as to whether or not to appoint counsel must be made before deciding any other issues in the case. If the district court declines to appoint counsel and if the non-attorney parent is unable to retain counsel, the complaint should be dismissed without prejudice." Fayemi v. Bureau of Immigration & Custom Enforcement, No. 04-CV1935, 2004 WL 1161532, at *2, 2004 U.S. Dist. LEXIS 9256, at *4 (E.D.N.Y. May 24, 2004) (internal citations omitted). There is no right to be appointed counsel in a civil matter, even where the indigent is an infant.

"As a threshold matter, ... the district court must consider the merits of the indigent's claim." Hodge v. Police Officers, 802 F.2d 58, 60 (2d Cir. 1986). The Court has reviewed Plaintiff's application and finds that the appointment of counsel is

not warranted at this stage. As discussed more fully below, Plaintiff's claims do not have sufficient merit and therefore do not satisfy the threshold requirement of Hodge, 802 F.2d at 61.

Because the Court declines to appoint counsel on behalf of Noel Palumbo, and because Robert Palumbo has indicated that he is unable to retain counsel on her behalf, the Court dismisses all claims on behalf of Noel Palumbo without prejudice. See Cheung v. Youth Orchestra Foundation, Inc., 906 F.2d 59, 62 (2d Cir. N.Y. 1990) ("If [the non-attorney parent] does not retain counsel and if the district court declines to appoint counsel, the complaint should be dismissed without prejudice."); Hughes v. Callahan, No. 97-CV-5652, 1998 U.S. Dist. LEXIS 14840, at *1 (E.D.N.Y. Aug. 3, 1998) ("Accordingly, the Court must either appoint counsel for the child in this case, or dismiss the case without prejudice."). Noel Palumbo is therefore dismissed without prejudice as a plaintiff from this action.

### B. Motion to Appoint Counsel for Robert Palumbo

The Court similarly finds that counsel for Robert Palumbo is not warranted because Plaintiff's case is not likely to be of substance. See Fayemi v. Bureau of Immigration & Custom Enforcement, 2004 WL 1161532, 2004 U.S. Dist. LEXIS 9256 (E.D.N.Y. May 24, 2004) ("In determining whether to appoint counsel, a district court must first determine whether the indigent litigant's position 'seems likely to be of substance.'") (quoting Wenger v. Canastota Cent. Sch. Dist., 146 F.3d 123, 125 (2d Cir. 1998) ). Accordingly, Plaintiff's application for appointment of counsel is DENIED without prejudice to renewal at a later stage of the proceedings, if circumstances warrant such an application.

### II. Motions to Dismiss Standard of Review

#### A. Rule 8

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part, that a complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief," and "[e]ach averment of a pleading shall be simple, concise, and direct." Fed. R. Civ. P. 8. Essentially, Rule 8 ensures that a complaint provides a defendant with sufficient notice of the claims against him. See Fed. R. Civ. P. 8; Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). In that vein, the Second Circuit has held that complaints containing only vague or conclusory accusations and no specific facts regarding the alleged wrongdoing do not allow defendants to frame an intelligent defense and are therefore

subject to dismissal. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987).

#### B. Rule 12(b)(1)

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001). Under Rule 12(b)(1), the Court will deem true the factual allegations contained in the complaint. See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). However, where there is a question involving federal jurisdiction, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998) (citing Norton v. Larney, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925) ).

#### C. Rule 12(b)(6)

**\*4** On a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must satisfy a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). The Complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be clear, on a motion to dismiss, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." Id. at 1974.

In applying this standard, the district court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).

When deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998). Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002). "Of course, it may also consider matters of which

Palumbo v. Ross, Not Reported in Fed. Supp. (2009)

2009 WL 10708951

judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner, Inc., 837 F.2d 767, 773 (2d Cir. 1991).

III. The Claims Against the Judicial Defendants are Dismissed

The Court finds that Plaintiff's claims against the Judicial Defendants are barred by the Rooker-Feldman doctrine and absolute judicial immunity. Because the Court dismisses Plaintiff's Complaint on the aforementioned grounds, the Court declines to address the Judicial Defendants' remaining arguments for dismissal.

A. Plaintiff's Claims are Barred by the Rooker-Feldman Doctrine

The Judicial Defendants argue, and the Court agrees, that Plaintiff's claims are barred by the Rooker-Feldman doctrine. Coalescing the Supreme Court's holdings in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and Rooker v. Fidelity Trust Co. 263 U.S. 413, 414-17, 44 S.Ct. 149, 150, 68 L.Ed. 362 (1923), the Rooker-Feldman doctrine prohibits federal district courts from considering collateral attacks to state court judgments.

There are four requirements for the application of the Rooker-Feldman doctrine: (1) the federal-court Plaintiff must have lost in state court; (2) the Plaintiff's injuries must be caused by the state court judgment; (3) the Plaintiff's claims must invite the district court to review and reject the state court judgment; and (4) the state-court judgment must have been rendered prior to the commencement of the district court proceedings. See Hoblock v. Albany County Bd. of Elections, 422 F.3d 77, 85 (2d Cir. 2005).

Here, Plaintiff was the state-court loser in the Nassau County Supreme Court. Plaintiff is now dissatisfied with the state court's order sequestering Plaintiff's account. The order of sequestration was issued prior to this action. Further, it is clear that Plaintiff raised ERISA as a defense in the state court proceedings prior to the sequestration order. In a decision dated May 21, 2007, Referee Gibson considered, and rejected, Plaintiff's arguments that the state court lacked jurisdiction over Plaintiff's retirement accounts. Specifically, Referee Gibson stated,

　　**\*5** [t]here is no merit in [Plaintiff's] contention that this Court lacks

jurisdiction to adjudicate on the Keogh accounts because of [ERISA]. It is settled that this Court, like other States' courts, can direct distribution of a Keogh account so long as it utilizes a qualified domestic relations order ("QDRO" ...). The defendant's contention ignores the fact that the QDRO exception to the ERISA anti-alienation rules is contained both in ERISA itself ... and in the Internal Revenue Code of 1986 (see, 26 U.S.C.A. § 414; ...).

The essence of Plaintiff's current Complaint is that ERISA preempts state law and therefore the Judicial Defendants lacked jurisdiction to issue the sequestration order. However, Plaintiff's arguments have already been heard by the state court; a review of Plaintiff's claims by this Court would be tantamount to a federal district court hearing an appeal of a state court judgment, which this Court cannot do. Such a review would be barred by the Rooker-Feldman doctrine, and additionally by the doctrine of issue preclusion because the state court has already rendered a decision regarding ERISA premption. See Wolff v. City of N.Y. Fin. Servs. Agency, 939 F.Supp. 258, 264-65 (S.D.N.Y. 1996) ("Federal courts must give the same preclusive effect to a New York court's judgment that [state] courts would give it.") (citing Migra v. Warren City Sch. Dist., 465 U.S. 75, 83, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) ). Plaintiff's recourse is to seek appeal in the state courts, and not to file a separate action in federal court to overturn the sequestration order.

B. Judicial Immunity

The doctrine of judicial immunity bars Plaintiff's claims against Judge Ross and Referee Gibson. It is well-settled that judges are subject to suit only for (1) "non-judicial actions, i.e., actions not taken in the judge's judicial capacity," or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); see Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Judicial immunity applies to all judges and extends to other individuals engaged in a judicial function, that is the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights," Burns v. Reed, 500 U.S. 478, 498-502, 111 S.Ct. 1934,

Palumbo v. Ross, Not Reported in Fed. Supp. (2009)

2009 WL 10708951

1946-47, 114 L.Ed.2d 547 (1991). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 112 S.Ct. 286 (quoting Stump, 435 U.S. at 356, 98 S.Ct. 1099).

Here, Plaintiff's allegations relate to an Order issued by Judge Ross and Referee Gibson in their capacity as judicial officers overseeing Plaintiff's matrimonial action. Plaintiff is correct that ERISA generally preempts state laws that relate to employee benefits plans. 29 U.S.C. § 1144(a). However, there are "several exceptions to its general preemption provision, one of which is relevant here: ERISA does not preempt 'qualified domestic relations orders ["QDRO"].' " Metro. Life Ins. Co. v. Bigelow, 283 F.3d 436, 440 (2d Cir. 2002) (quoting 29 U.S.C. § 1144(b)(7) ). In this case, the sequestration order was issued as a QDRO, and thus may have qualified as an exception to ERISA.

The Court is cognizant of Plaintiff's argument that the Judicial Defendants lacked jurisdiction to sequester Plaintiff's account for attorney's fees. Liberally construed, Plaintiff's argument could be read as stating that the sequestration order did not qualify as a QDRO. However, the Court will not opine on the propriety of the sequestration order and whether it properly qualified as a QDRO. Regardless of whether the action was taken in error, and the sequestration order did not meet the requirements for a QDRO, it cannot be said that the order was issued in the complete absence of all jurisdiction. As the Supreme Court stated in one of its cornerstone judicial immunity opinions, "judges ... are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter." Bradley v. Fisher, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872). Here, the Judicial Defendants did not act in complete absence of jurisdiction, and therefore are entitled to judicial immunity for their actions in issuing the sequestration order. [3]

[3]   In addition to the doctrine of judicial immunity, Plaintiff's demand for monetary damages against the Judicial Defendants cannot be maintained under ERISA. "Only the plan and the administrators and trustees of the plan in their capacity as such may be held liable" in a recovery of benefits claim. Leonelli v. Pennwalt Corp., 887 F.2d

1195, 1199 (2d Cir. N.Y. 1989) (citing § 1132(d) (2) ); see also Ortiz v. Local 32BJ, 2008 U.S. Dist. LEXIS 41973 (S.D.N.Y. May 21, 2008) (holding that claims against a union for improperly distributing funds from plaintiff's ERISA account were implausible because the union was neither a plan, administrator, nor trustee of the plan). Here, the Judicial Defendants are not administrators or trustees of the plan, and as such, Plaintiff cannot bring an action against them for monetary relief.

**\*6** Accordingly, because the Judicial Defendants are entitled to absolute immunity, the motion to dismiss on behalf of Defendants Justice Ross and Referee Gibson is granted in its entirety.

## IV. Claims Against Defendants Rhindress and Nicolosi

Defendants Rhindress and Nicolosi move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6). Rhindress and Nicolosi argue that Plaintiff has not stated any legally cognizable claims against them.

Notwithstanding the liberal pleading standards granted to a pro se Plaintiff, all complaints must contain at least "some minimum level of factual support for their claims." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987). Here, the Court cannot discern exactly what Plaintiff's claims are against Defendants Nicolosi and Rhindress. As noted above, Plaintiff cannot seek monetary damages against Nicolosi and Rhindress for a violation of ERISA because these Defendants are not plan administrators or trustees. See Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989). If there are claims other than an alleged ERISA violation within the Complaint, it is entirely unclear exactly what the claims are and what Defendants' involvement was in these claims. Accordingly, the Court DISMISSES Plaintiff's claims against Defendants Rhindress and Nicolosi for failure to comply with Federal Rule of Civil Procedure 8. However, as discussed more fully below, the Court grants Plaintiff an opportunity to amend his claims against Defendants Nicolosi and Rhindress.

## V. Claims Against H&R Block

Although not entirely clear, Plaintiff's allegations against H&R Block appear to be that H&R Block breached its fiduciary duty to Plaintiff and violated ERISA by refusing to distribute funds to Plaintiff. H&R Block moves to compel

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    5

Palumbo v. Ross, Not Reported in Fed. Supp. (2009)
2009 WL 10708951
Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 22 of 49

Plaintiff to arbitration based upon a written arbitration agreement Plaintiff signed.

H&R Block has submitted a signed account application wherein Plaintiff acknowledges receiving the H&R Block Investor's Account Agreement (hereinafter "Agreement") and understanding that Plaintiff is bound by the terms and conditions of the Agreement. See Sellar Dec. Ex. A. The Agreement states that the investor "agree[s] to submit any and all controversies or claims arising out of the relationship established by [the] Agreement ... to arbitration." Id. Ex. B ¶ 24. Plaintiff does not deny signing the acknowledgment, nor does he argue fraud or overreaching. Plaintiff merely asserts, "[w]hile I don't remember reading or even seeing the handbook, I remember the discussion with Investment Manager Drew Keenan." Plaintiff then proceeds to argue that the Court has jurisdiction over his claims because of ERISA.

"There is a strong federal policy favoring arbitration as an alternative means of dispute resolution" and any "doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability." ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 2002) (internal quotations omitted). The Court finds that Plaintiff agreed to submit all disputes arising out of his relationship with H&R Block to arbitration. Although Plaintiff vaguely asserts that he does not remember reading the Agreement, the Court finds that this unsupported allegation does not render the clause ineffective. See Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (rejecting the plaintiff's argument that he failed to fully read agreement before signing arbitration clause); see also Tarulli v. Circuit City Stores, Inc., 333 F.Supp.2d 151, 156 (S.D.N.Y. 2004) (finding that plaintiff was bound by arbitration agreement regardless of whether she read it because "[i]n New York, ... parties are bound 'by the contracts they sign whether or not the party has read the contract so long as there is no fraud, duress or some other wrongful act of the other party.' ") (quoting Tuskey v. Volt Info. Scis., Inc., No. 00-CV-7410, 2001 WL 873204, at *3, 2001 U.S. Dist. LEXIS 10980, at *9 (S.D.N.Y. Aug. 3, 2001) ). Thus, the Court finds that Plaintiff's claims against H&R Block must be referred to arbitration.

 *7  Plaintiff's claims against H&R Block are stayed pending the outcome of arbitration. See Centra Indus. v. McGuirewoods, LLP, 270 F.Supp.2d 386, 389 (S.D.N.Y. 2003) ( ["P]roper course is to stay ... claims in this Court while

the arbitration proceeds" and not to dismiss claims referred to arbitration).

VI.  Leave to Amend
On April 4, 2008, Plaintiff filed a motion for leave to file a Second Amended Complaint. Plaintiff's proposed Second Amended Complaint asserts a variety of state law actions and asserts claims under 42 U.S.C. §§ 1983 and 1985, 18 U.S.C. §§ 1951-1960, and 18 U.S.C. § 1961. On April 30, 2008, the Judicial Defendants filed an opposition to Plaintiff's motion to amend; the remaining Defendants have not filed an opposition.

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. A district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991).

A.  Proposed Claims Against the Judicial Defendants
Plaintiff's proposed Second Amended Complaint purports to assert various new claims against the Judicial Defendants, including claims under Sections 1983 and 1985, a RICO violation, and various state law claims. However, each of the new claims relate to Plaintiff's dissatisfaction with the sequestration order and with various other orders issued by Judge Ross in the state court proceedings.

Plaintiff's proposed new claims against the Judicial Defendants are barred by judicial immunity. The proposed Second Amended Complaint does not assert any new facts which would overcome the doctrine of judicial immunity, and in fact, again asserts claims related to actions taken by the Judicial Defendants in their official capacity as officers overseeing the underlying state court proceedings. As discussed above, the doctrine of judicial immunity is specifically applicable to actions brought pursuant to 42 U.S.C. § 1983. See Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997). Although absolute judicial immunity does not bar claims for prospective injunctive relief, "such relief is not available under § 1983 absent an allegation of a violation of a prior declaratory decree, which is not this case." Jacobs v. Mostow, 271 Fed. Appx. 85, 88 (2d Cir. 2008). Likewise, Plaintiff's proposed RICO claims would be barred by judicial immunity. See Peia v. U.S. Bankr. Ct., 62 Fed. Appx. 394, 396

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 23 of 49
Palumbo v. Ross, Not Reported in Fed. Supp. (2009)
2009 WL 10708951

(2d Cir. 2003) (holding that RICO claims against bankruptcy judges were barred by judicial immunity).

In sum, Plaintiff's Second Amended Complaint may not assert new claims against the Judicial Defendants; the Court finds that such amendment would be futile as the Court has already determined that the Judicial Defendants are entitled to absolute immunity for their actions in Plaintiff's state court domestic relations proceedings. See Hom v. Brennan, 304 F.Supp.2d 374, 380 (E.D.N.Y. 2004) (finding that amendment would be futile because the potential judicial defendant was protected by judicial immunity).

### B. Proposed Claims Under Section 1983

**\*8** The Court finds that Plaintiff's proposed Second Amended Complaint fails to state a cognizable claim under Section 1983. To state a claim under Section 1983, "a plaintiff must allege that: (1) the challenged conduct was attributable at least in part to a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999) (citing Dwares v. New York, 985 F.2d 94, 98 (2d Cir. 1993) (overruled on other grounds) ).

Plaintiff's proposed Section 1983 claims fail because Nicolosi and Rhindress are not state actors. Only under highly limited circumstances, not alleged here, will a private individual be held liable under Section 1983. See Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992); see also Rendell-Baker v. Kohn, 457 U.S. 830, 838-42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982); Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157-60, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

To the extent that Plaintiff alleges a conspiracy between state actors, i.e., the Judicial Defendants, and private parties, Plaintiff fails to allege facts to support such a claim. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." Spear v. Town of W. Hartford, 954 F.2d 63, 68 (2d Cir. 1992). In other words, a private actor acts under color of state law when the private actor "is a willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (quoting United States v. Price, 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) ). Merely conclusory allegations that a private entity acted in concert with a state actor does not suffice to state a Section 1983 claim against the private entity. Spear, 954 F.2d at 68.

Here, Plaintiff's Complaint summarily states that Nicolosi "acted in concert" with Ross. Such conclusory allegations are insufficient to support a Section 1983 claim against private individuals.

However, the Court is cognizant of Plaintiff's pro se status, and thus will grant Plaintiff an opportunity to amend his Complaint to the extent that he can assert a cognizable Section 1983 claim against Defendants Nicolosi and Rhindress.

### C. Section 1985 Claims

Plaintiff alleges that his Complaint is also brought pursuant to 42 U.S.C. § 1985. In order to state a cognizable claim under Section 1985, Plaintiff must allege that he was a member of a protected class, that Defendants conspired with others to deprive him of his constitutional rights, that Defendants acted with class-based, invidiously discriminatory animus, and that Plaintiff suffered damages as a result of Defendants' actions. See 42 U.S.C. § 1985(2), (3); Griffin v. Breckenridge, 403 U.S. 88, 102-103, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

Plaintiff's proposed Second Amended Complaint fails to set forth a claim under Section 1985. At the outset, Plaintiff has not shown that he is a member of a protected class. Additionally, Plaintiff has not provided any factual support for a claim of conspiracy based on racial or other class-based animus. However, because Plaintiff is proceeding pro se, the Court will grant Plaintiff an opportunity to amend his Complaint to allege a Section 1985 claim. As with Plaintiff's Section 1983 claim, Plaintiff may not assert a Section 1985 claim against the Judicial Defendants as any such amendment would be futile.

### D. Racketeering Influenced and Corruption Act

**\*9** Plaintiff cites to a variety of statutes in his proposed Second Amended Complaint in what appears to be an attempt to assert a civil Racketeering Influenced and Corruption Act ("RICO") claim.

"To state a RICO claim, a plaintiff must plead '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity.' " Anatian v. Coutss Bank Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985) ). A plaintiff must also plead injury to business or property as a result of the RICO violation. See id. Plaintiff's proposed Second Amended Complaint fails to set forth a RICO Claim as it does not plead an enterprise or a pattern of racketeering

**Palumbo v. Ross, Not Reported in Fed. Supp. (2009)**
Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 24 of 49
2009 WL 10708951

activity. Nonetheless, in light of Plaintiff's pro se status, and in light of the fact that Defendants Rhindress and Nicolosi have not opposed Plaintiff's motion to amend, the Court will grant Plaintiff an opportunity to amend his Complaint to add a RICO claim.

#### E. State Law Claims

Plaintiff's proposed state law claims are unclear. Plaintiff asserts a "Fourth Cause of Action Against Defendants Nicolosi and Rhindress" but does not delineate exactly what claim he seeks to assert in this fourth cause of action. Similarly, Plaintiff asserts a "Thirteenth Cause of Action Continuous Tort" but does not explain what the tort is. Finally, Plaintiff asserts a "Sixteenth Cause of Action Against H&R Block," but again does not specify what this sixteenth cause of action is. Plaintiff's proposed Second Amended Complaint skips from a fourth cause of action to a thirteenth cause of action, and then to a sixteenth cause of action. There is no fifth through twelfth action, nor is there a fourteenth or fifteenth action.

The Court cannot decipher exactly what Plaintiff's state law claims are. For example, Plaintiff's thirteenth cause of action vaguely states that the "torts committed by defendants individually and in concert constitute continuous torts as defined by Federal law, caselaw and New York law and caselaw." Proposed Sec. Am. Comp. ¶ 88. It is unclear what the facts are underlying this continous tort, and what exactly the tort is. Similarly, the sixteenth cause of action against H&R Block states that H&R Block was negligent, violated Plaintiff's confidentiality, and illegally confiscated Plaintiff's retirement plan. It is unclear whether Plaintiff purports to assert a claim for negligence, for a breach of fiduciary duty, or perhaps a claim for conversion, or a claim under all three state law theories. The proposed state law claims simply do not meet the pleading requirements of Rule 8.

Although the state law claims in the proposed Second Amended Complaint are entirely unclear, the Court must be considerate of Plaintiff's pro se status. Plaintiff may amend his Complaint once to assert state law claims; however, the claims must meet the requirements of Rule 8 and thus the proposed Second Amended Complaint cannot be submitted

in its current form. As stated above, amendment of the claims against the Judicial Defendants would be futile as these Defendants are subject to judicial immunity for their official actions. Additionally, any amended claims against H&R Block will be stayed pending arbitration. Plaintiff's Amended Complaint must be filed no later than March 23, 2009.

#### CONCLUSION

**\*10**  For the reasons stated above, the Court GRANTS Nicolosi and Rhindress's motion to dismiss (Docket Entry No. 9), GRANTS the Judicial Defendants' motion to dismiss (Docket Entry No. 10), DENIES the motion to appoint counsel (Docket Entry No. 12), GRANTS H&R Block's motion to compel arbitration (Docket Entry No. 21), and DENIES in part and GRANTS in part Plaintiff's motion for leave to file a Second Amended Complaint (Docket Entry No. 25).

Plaintiff may file a Second Amended Complaint against Defendants Nicolosi, Rhindress, and H&R Block; the Second Amended Complaint must comply with Federal Rule of Civil Procedure 8, and any new claims against H&R Block will be stayed pending arbitration. The Court denies permission to add new claims against the Judicial Defendants as any such amendment would be futile. Plaintiff's Amended Complaint must be filed no later than March 23, 2009.

Finally, Plaintiff's motion for reconsideration of the Court's Order denying Plaintiff's Order to Show Cause (Docket Entry No. 35) and Plaintiff's emergency motion for disbursement of funds (Docket Entry No. 43) are dismissed as moot. The Court has already determined that it cannot overturn the State Court order of sequestration.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2009 WL 10708951

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

2019 WL 1300547
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicholas LECLAIR, individually and
as parent and natural guardian of "I.L."
and "S.L.", his children, Plaintiff,
v.
Jessica VINSON, et al., Defendants.

Civ. No. 1:19-CV-28 (BKS/DJS)
|
Signed 03/21/2019

**Attorneys and Law Firms**

NICHOLAS LECLAIR, Plaintiff, Pro Se, P.O. Box 300,
Chestertown, NY 12817.

## REPORT RECOMMENDATION and ORDER

Daniel J. Stewart, U.S. Magistrate Judge

**\*1** The Clerk has sent to the Court a Complaint filed by *pro se* Plaintiff Nicholas LeClair on behalf of himself and this two children, designated as "I.L." and "S.L." Dkt. No. 1, Compl. [1] On Feburary 4, 2019 Plaintiff filed an Amended Complaint as of right, which is now the operative pleading and is therefore the subject of this Court's review. Dkt. No. 4., Am. Compl. Plaintiff has not paid the filing fee, but has submitted a Motion to Proceed *In Forma Pauperis.* Dkt. No. 2. [2]

[1]    For ease of reference, the Court will refer to Mr. LeClair as "Plaintiff" and his children by their initials as Plaintiff does in his Amended Complaint, although the children are currently listed as plaintiffs.

[2]    By separate Order, the Court has granted Plaintiff's IFP application. Dkt. No. 6.

The present Amended Complaint, submitted by a *pro se* litigant, is over 200 typed pages, and covers conduct in Vermont, New Hampshire, and New York. *See generally* Am. Compl. Plaintiff Nicholas LeClair seeks to bring a civil rights action on behalf of himself and his two children regarding conduct of members of the Warren County Department of Social Services, the Warren County Family Court, and a

private attorney appointed by the Court, which conduct is said to have prevented the reunification of Plaintiff and his children by creating a "prejudicial" Family Court Record and by covering up alleged misconduct of the maternal grandmother, who at one point in time had physical custody of the two children, and her son. *See* Am. Compl.

## I. INTRODUCTION

### A. Factual Statement

Briefly stated, the Amended Complaint alleges that Plaintiff is married to Emily Whipple and they are the parents of two children, I.L. and S.L., who at the times relevant, were between the ages of one and three. Am. Compl. at ¶ 3. While living in New Hampshire, Plaintiff and his wife were arrested and their children were placed in protective custody. *Id.* at ¶ 25. Plaintiff and his wife were thereafter released on their own recognizance after a weekend in custody. *Id.* at ¶ 31. Plaintiff and his family relocated to Warren County, and at one point moved in with Lacey Ferguson and her son Jacob in Chestertown, New York. *Id.* at ¶ 33. Lacey Ferguson is Ms. Whipple's mother and the grandmother of Plaintiff's children. *Id.* What then follows in the Amended Complaint is a lengthy saga involving numerous members of Warren County Child Protective Services ("CPS"), the Warren County Family Court and its staff, and various attorneys, regarding the grandmother's attempt to obtain custody of I.L. and S.L., and Plaintiff's attempt to prevent that and regain custody of his children. *Id.* at ¶ 32.

### B. Family Court Record

This Court's review of the Family Court's orders discloses as follows: First, on March 14, 2018 Judge Ted Wilson issued a temporary order on consent giving the grandmother sole legal and physical custody of the minor children. Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Mar. 14, 2018 (available on file at Warren County Family Court). Next, on May 7, 2018, the Family Court modified the prior ruling and issued a second temporary order of custody, giving the grandmother and the children's parents joint legal custody, with the grandmother having primary physical custody. Second Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 7, 2018 (available on file at Warren County Family Court). A third temporary order

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 26 of 49

of custody was issued on May 29, 2018, which continued joint legal custody to the parents and the grandmother, but modified the conditions of visitation of the mother and father. Third Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, May 29, 2018 (available on file at Warren County Family Court). A fourth order was issued on June 12, 2018, which modified conditions of visitation, but maintained primary physical custody of the children with the grandmother. Fourth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, July 12, 2018 (available on file at Warren County Family Court). A fifth order was issued on August 7, 2018, at which time legal and physical custody of the children was awarded to the parents, with visitation provided to the grandmother. Fifth Temporary Order of Custody, *Ferguson v. Whipple*, File No. 11964, Aug. 7, 2018 (available on file at Warren County Family Court). Finally, on October 9, 2018, the Family Court issued the final order of custody which provided for legal and physical custody of the children to Plaintiff and his wife, and changed the grandmother's visitation schedule. Final Order of Custody and Visitation, *Ferguson v. Whipple*, File No. 11964, Oct. 9, 2018 (available on file at Warren County Family Court). An Appeal was filed by Mr. LeClair, but that Appeal was dismissed by the Appellate Division, Third Judicial Department. [3]

[3]    The Court takes judicial notice of the Family Court orders. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 103 (N.D.N.Y. 2013) (taking judicial notice of custody order of the Family Court); *Villanueva v. City of New York*, 2010 WL 1654162, at \*5 (S.D.N.Y. Apr. 14, 2010) ("[W]e consider the court orders and hearing transcripts from the underlying Family Court proceedings....").

### C. Allegations and Claims

**\*2**  The following is a summary of the named Defendants to the action and the conduct for which they are thought to be liable for damages:

1. **Jessica Vinson.** Ms. Vinson is a private attorney who was appointed by the Family Court as the Law Guardian for Mr. LeClair's two minor children. Am. Compl. at ¶¶ 7, 45. It is claimed that she violated her professional responsibility by supporting the custody claim of the grandmother and not that of the mother and father. *E.g., id.* Plaintiff alleges that Ms. Vinson's improper

representation of the two children denied Plaintiff due process. *Id.*

2. **Sarah Raymond.** Ms. Raymond is a social worker for the Warren County Office of Child Protective Services. *Id.* at ¶ 4. She was involved in investigating the condition of the children; providing information to the Family Court; and making motions to the Family Court with regard to the custodial status of Plaintiff's two children. *Id.* She also investigated a claim that Ms. Ferguson and her son physically abused one of Plaintiff's children. *E.g., id.* at ¶ 382. That claim was ultimately determined to be unfounded. *Id.* at ¶ 400. Plaintiff objects to Ms. Raymond's allegedly improper investigation, including suggestive questioning and entering Plaintiff's residence uninvited, as well as her advocation for separation of the children from the parents. *E.g., id.* at ¶ 451.

3. **Danielle Colon.** Ms. Colon is a social worker employed by Warren County and is employed in the Foster Care Unit of Child Protective Services. *Id.* at ¶ 6. She is said to have not properly investigated the claim of abuse against I.L. *Id.* at ¶¶ 353-379. She is also alleged to have fabricated evidence and falsified reports in the Family Court proceeding. *E.g., id.* at ¶¶ 458, 469.

4. **John Lord and Tammy Breen.** Mr. Lord and Ms. Breen are said to be supervisors employed by Warren County in the Child Protective Unit. They are alleged to have created a policy of concealing the alleged abuse by the grandmother and her son, while simultaneously using coerced and fabricated reports to implicate Mr. LeClair, thereby negatively affecting the outcome of his Family Court proceeding. *Id.* at ¶¶ 5, 8, 447.

5. **Katherine Thompson.** Ms. Thompson is the Chief Court Clerk for the Warren County Family Court. *Id.* at ¶ 11. In the Amended Complaint it is alleged that, among other things, she would not accept *ex parte* motions prepared by Mr. LeClair during a time when he was represented by appointed counsel. She also allegedly discouraged him from attempting to represent himself. *E.g., id.* at ¶¶ 423-30.

6. **Garfield Raymond.** Mr. Raymond is a law clerk to the Hon. Ted Wilson, Family Court Judge for Warren County. *Id.* at ¶ 12. Mr. Raymond is said to be responsible for, and "controlled," the record in the Family Court, and for not allowing Plaintiff to file his own motions in the Family Court proceeding when he was represented by an attorney. *Id.* at ¶¶ 268-270, 430.

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 27 of 49

2019 WL 1300547

7. **Terra Cahill and Whitney Hoerter**. Ms. Cahill and Ms. Hoerter are employed as Social Workers by Warren County in the Child Protective Service Unit. *Id.* at ¶¶ 9, 10. Ms. Hoerter is said to have put false information into a service plan; acted as "muscle" to coerce Plaintiff and his wife into accepting further services; and suppressed evidence of abuse and presented false evidence in the Family Court proceeding. *Id.* at ¶¶ 10, 153, 323, 458. Defendant Cahill is said to have improperly conducted an abuse investigation; refused to accept evidence of injury to Plaintiff's child; failed to timely interview that child; and presented false evidence to the Family Court. *Id.* at ¶¶ 9, 199, 355, 367, 455, 458.

**\*3**  8. **Warren County**. Warren County is said to be a governmental entity, and the employer of all the other Defendants. *Id.* at ¶¶ 4-13.

The Amended Complaint seeks to assert five causes of action:

Count One of the Amended Complaint is brought against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, Hoerter, and Cahill; it alleges a due process violation premised upon the Defendants presenting false evidence against Mr. LeClair, while simultaneously being negligent in their investigation of Lacey and Jacob Ferguson for their alleged abuse of Plaintiff's children. *Id.* at ¶ 456. According to Plaintiff, this resulted in a prejudicial record before the Family Court, and therefore denied Plaintiff an equal right to justice. *Id.* at ¶ 458. Plaintiff further claims that he, his wife, and his children were not properly represented by counsel at the Family Court proceeding. *Id.* at ¶ 463.

Count Two is a section 1983 claim based upon intentional infliction of emotional distress. *Id.* at ¶¶ 476-479. That claim is also against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, Hoerter, and Cahill.

Count Three is a section 1983 claim for abuse of civil process against Defendants Breen, Lord, S. Raymond, Colon, Vinson, G. Raymond, Thompson, and Cahill. *Id.* at ¶¶ 480-485.

Count Four is a claim against Defendants Vinson and Sarah Raymond for alleged violations of the Fourteenth Amendment right of family association, as well as a Fourth Amendment violation for an alleged illegal search, seizure, and detention. *Id.* at ¶¶ 486-494.

Finally, the Fifth Count of the Amended Complaint is against Defendants Sarah Raymond and Terra Cahill for an alleged coercive interview. *Id.* at ¶¶ 495-499.

## II. DISCUSSION

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

In reviewing a *pro se* complaint, this Court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556). Although the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'–'that the pleader is entitled to relief.' " *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2) ). Furthermore, Federal Rule of Civil Procedure 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell*

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

*Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 Fed. Appx. 102, 104 (2d Cir. 2009).

**\*4** "Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) ). However, where the grounds for dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate. *Kunz v. Brazill*, 2015 WL 792096, at \*3 (N.D.N.Y. Feb. 25, 2015).

## A. Claims on Behalf of the Children

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007); *see also* 28 U.S.C. § 1654. Moreover, under the "prudential standing rule" litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014). While adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child" because "[t]he choice to appear *pro se* is not a true choice for minors who under state law, cannot determine their own legal actions.") (citing FED. R. CIV. P. 17(b) ). Thus, in this case the children may not be plaintiffs on their own because they are minors, and the father, Nicholas LeClair, may not represent his children. *See also Armatas v. Maroulleti*, 484 Fed. Appx. 576 (2d Cir. 2012) (summary order). It follows that the Plaintiff's Amended Complaint, insofar as it seeks to assert claims on behalf of his two minor children, should be **dismissed**. *Bullock v. DSS, CPS, Comm'r*, 2018 WL 1115218, at \*4 (N.D.N.Y. Jan. 18, 2018), *report and recommendation adopted*, 2018 WL 1111059 (N.D.N.Y. Feb. 26, 2018). That dismissal, however, should be **without prejudice** to allow the children, when properly represented by legal counsel, to reassert these claims. I therefore recommend

that, should Plaintiff be afforded the opportunity to file a further amended complaint, he be provided time to retain counsel or to request counsel be appointed for his children. [4]

4  There is no legal right to counsel in civil cases. However, 28 U.S.C. § 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel." 28 U.S.C. § 1915(e)(1). The Court cautions Plaintiff that while counsel may be appointed in appropriate circumstances, *see* FED. R. CIV. P 17(c); 28 U.S.C. § 1915(e)(1), counsel is not appointed in many cases, particularly where, as here, there is not a fully developed record from which an assessment of the merits of the case can be made. *See Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986) (stating that, in determining whether to appoint counsel, the court must first determine whether the indigent's claims are likely to be of substance, and then consider a number of factors regarding the nature of the case and the indigent's abilities).

## B. Jurisdiction

It is well settled that a federal court, whether trial or appellate, is obligated to notice on its own motion the basis for its jurisdiction. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 512 (1973); *see also Alliance of Am. Ins. v. Cuomo*, 854 F.2d 591, 605 (2d Cir. 1988) (challenge to subject matter jurisdiction cannot be waived); FED. R. CIV. P. 12(h)(3) (court may raise basis of its jurisdiction *sua sponte* ). When subject matter jurisdiction is lacking, dismissal is mandatory. *United States v. Griffin*, 303 U.S. 226, 229 (1938); FED. R. CIV. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In light of Plaintiff's *pro se* status, the Court will *sua sponte* assess whether subject matter jurisdiction is present in this case. *Kruglov v. Copart of Connecticut, Inc.*, 2018 WL 1399332, at \*3 (N.D.N.Y. Jan. 16, 2018), *report and recommendation adopted*, 2018 WL 1399337 (N.D.N.Y. Mar. 19, 2018).

**\*5** In the present case, Plaintiff cites to violations of federal constitutional law, and seeks redress under the civil rights statute, 42 U.S.C. § 1983. The federal courts would normally have original jurisdiction under 28 U.S.C. § 1331 to hear such a case; however, because of the precise allegations of

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

the claims, the Court must also consider three additional well established jurisdictional rules.

### 1. The Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993). Specifically, the Supreme Court has recognized that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (internal quotation marks omitted) (citation omitted); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees") (internal quotation marks omitted) (citation omitted); *see also Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967). Therefore, insofar as the present *pro se* Complaint seeks to overturn a custody decision of the family court, the federal courts lack jurisdiction to hear that claim, and it should be dismissed. *Amato v. McGinty*, 2017 WL 4083575, at *5 (N.D.N.Y. Sept. 15, 2017).

This principle, however, does not appear to be a complete bar to the present *pro se* Complaint. As noted above, the Warren County Family Court has granted Plaintiff and his wife physical and legal custody of his two children and therefore it does not appear that the present Complaint is seeking to overturn the final custody order; rather, it seeks damages for constitutional violations based, *inter alia*, on Family Court orders that have already been changed. Such a claim does not run against the domestic relations exception. *Thomas v. New York City*, 814 F. Supp. 1139, 1147 (E.D.N.Y. 1993) ("[T]he adjudication of whether the state's procedure ... complies with the constitutional due process requirements is squarely within this Court's federal question jurisdiction and does not entail any investigation by the federal court into the fitness of the parent to care for the child or the issuance of any decree that the parent must necessarily be reunited with the child...."). For this reason, the domestic relations exception is not a total bar to Plaintiff's claims.

### 2. *The Rooker-Feldman Doctrine*

A dismissal pursuant to the *Rooker-Feldman* doctrine is for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed. Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that "seek to overturn state court judgments." *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

**\*6** There are four requirements to the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) the plaintiff's injuries must have been caused by a state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the state-court judgment must have been rendered prior to filing the federal court action. *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005). Giving a generous reading to the *pro se* Plaintiff's Amended Complaint, it is not clear that the *Rooker-Feldman* doctrine applies. Indeed, in a factually similar case the Second Circuit concluded that the plaintiff did not meet "at least two of the *Rooker-Feldman* requirements: the plaintiff did not lose in state court and plaintiff does not 'invite district court review and rejection' of a state court's judgment." *Green v. Mattingly*, 585 F.3d 97, 102 (2d Cir. 2009). As in *Green*, Plaintiff LeClair has been awarded custody of his children and therefore is not seeking to overturn a Family Court ruling, nor is he technically a state court loser. Therefore, the Court does not perceive this doctrine as a basis to prevent the Amended Complaint from proceeding past initial review on jurisdictional grounds. [5]

[5]  Of course, nothing prevents the surviving Defendants from presenting these issues to the Court by way of a motion on a more complete record.

### 3. *Younger Abstention*

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 30 of 49

In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. 37, 43-44 (1971). The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id. Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) "civil proceedings that are akin to criminal proceedings"; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). In *Sprint*, the Court used state-initiated custody proceedings as an example of civil proceedings which are akin to criminal proceedings. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419-420 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ); *see also Davis v. Baldwin*, 594 Fed. Appx. 49, 51 (2d Cir. 2015) (same).

While it is true that *Younger* abstention does not apply to claims for monetary damages, such as the present one, the doctrine does dictate that "a stay of the action pending resolution of the state proceeding may be appropriate." *Kirschner v. Klemons*, 225 F.3d 227, 238 (2d Cir. 2000). Based upon the present record, however, the Court believes that any issue regarding such a stay would be best left to the District Court after issue has been joined and with the benefit of fully filed briefs. Therefore, the Court does not perceive a jurisdictional basis to dismiss this entire matter upon initial review.

### C. State Action

Defendant Jessica Vinson is alleged to be a private attorney who represented Plaintiff's children in the family court proceedings. *See, e.g.*, Am. Compl. at ¶¶ 7, 43. Based on the allegations against her, however, she cannot be considered to be a state actor or someone whose conduct is fairly attributable to the State, an essential prerequisite to a § 1983 claim. It is well settled that conduct of private attorneys practicing in family court proceedings, even where they are paid by the State, do not rise to the level of State action. *Koziol v. King*, 2015 WL 2453481, at *11 (N.D.N.Y. May 22, 2015). That rationale applies to law guardians as well. *Id.* ("More to the point, it is equally well-settled that, 'although appointed by the state, an attorney for the child[ ] or law guardian is not a state actor because [s]he ... must exercise

independent professional judgment on behalf of the clients [she] represent[s].' ") (quoting *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd* 485 Fed. Appx. 500 (2d Cir. 2012) ).

**\*7** While it is true that private actors may be proper section 1983 defendants when they conspire with state actors, a mere conclusory allegation that a private individual acted in concert with state officials is wholly insufficient. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). In the present Amended Complaint, the conclusory, vague, and general allegations of conspiracy do not state a plausible civil rights claim against attorney Vinson. Accordingly, it is recommended that the claims against Defendant Jessica Vinson be **dismissed with leave to replead** allegations satisfying the state action requirement.

### D. Absolute Judicial Immunity

Judicial Immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967) ("This immunity applies ... not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 351 (1871) ). The present Amended Complaint contains many allegations relating to alleged misconduct or improper decisions by Family Court Judge Ted Wilson. *See* Am. Compl. at ¶¶ 132, 162, 275. No doubt recognizing the application of absolute judicial immunity, Plaintiff does not seek to name Judge Wilson as a defendant. However, he does sue members of the Warren County Family Court staff; in particular Judge Wilson's law clerk, Garfield Raymond as well as the Chief Family Court Clerk, Katherine Thompson. However, the vast breadth of judicial immunity protects against such allegations. It extends to the court clerk, as the allegations relate to her judicial functions. *Scott v. Dixon*, 720 F.2d 1542, 1546 (11th Cir. 1983), *cert. denied*, 469 U.S. 832 (1984); *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

afforded absolute immunity."). Judicial immunity also applies to the judicial law clerk, who is considered an extension of the judge at whose pleasure he serves. *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988). These claims Plaintiff seeks to assert are barred by absolute immunity and granting leave to amend would therefore be futile. *See Kunz v. Brazill*, 2015 WL 792096, at *3 (N.D.N.Y. Feb. 25, 2015). Accordingly, all claims against the Court Clerk Thompson and the Law Clerk G. Raymond should be **dismissed with prejudice.**

### E. Plaintiff's Claims

#### 1. Fourteenth Amendment Due Process

Plaintiff's first cause of action alleges, in part, that the Defendants presented false and fraudulent evidence during the family court proceeding. As a result, Plaintiff's familial relationship with his two children was damaged due to the interim custody orders issued by the family court providing physical custody to the children's grandmother, in violation of his due process rights protected by the Fourteenth Amendment to the United States Constitution. *See, e.g., Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000) (recognizing that substantive due process can protect against government interference with the right of parents to have custody of their children). Upon review, the Court finds that this aspect of the first cause of action in the Amended Complaint alleges enough to warrant a responsive pleading. In so doing, however, the Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed dispositive motion.

**\*8** It should be noted, however, that a separate part of the first cause of action in the Amended Complaint is centered upon the allegation that the Defendants did not timely and properly investigate a claim of abuse by the children's grandmother or her son. Am. Compl. at ¶¶ 456, 457 & 460. The failure of the Defendants to intervene and stop the alleged abuse is said to have led to further abuse of the children, and therefore violated Plaintiff's and the children's constitutional rights. *Id.* Such a theory of constitutional liability, however, has already been rejected by the United States Supreme Court in the case of *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989). In the *DeShaney* case the young child at issue, Joshua, was in the custody of his natural father. Social services received information that the child was being abused by his father but ultimately released him back to his father's custody upon the finding that there

was insufficient evidence of abuse. *Id.* at 192. It turned out that the father continued to abuse the child, resulting in permanent brain damage to Joshua. *Id.* at 193. Despite these tragic facts, the Supreme Court rejected the mother's claim on behalf of the child and held that the failure of Social Services to remove Joshua from his father's custody, despite the defendants' alleged knowledge of abuse, did not constitute a violation of the due process clause because the person causing injury was a private citizen, and not a state actor. *Id.* at 202. The Court noted that there was no affirmative obligation on the part of the state to provide protective services. *Id.* at 196-97. The present Amended Complaint suffers from the same impediment insofar as it seeks to hold the Warren County Defendants liable on the theory that they should have performed a more thorough investigation into the reported abuse and intervened to stop any further alleged abuse. The Court recommends that this portion of the cause of action be **dismissed with prejudice**.

#### 2. Intentional Infliction of Emotional Distress Under 42 U.S.C. 1983

As his second cause of action, Plaintiff has attempted to allege a section 1983 claim based upon the theory that the Defendants violated his civil rights due to their "intentional infliction of emotional distress." Am Compl. at ¶¶ 476-479. Although disfavored, New York does recognize such a claim under state common law for "extreme and outrageous conduct intentionally or recklessly caus[ing] severe emotional distress to another.... [The] conduct [must be] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983). It is clear from the Amended Complaint that Plaintiff is not seeking to pursue such a claim under state law. Nor is there is any specific allegation that Plaintiff complied with any notice of claim requirements that would be a condition precedent to such a state law claim. Rather, what Plaintiff seeks to do, but cannot, is to graft the state law claim requirements of an IIED claim on to an action under the federal civil rights statute. Stated simply, "[t]here is no recognized claim for intentional infliction of emotional distress under section 1983." *Schisler v. City of Rome*, 2017 WL 1418296, at *4 (N.D.N.Y. Mar. 22, 2017), *report and recommendation adopted*, 2017 WL 1411533 (N.D.N.Y. Apr. 20, 2017) (quoting *Watson v. Doe*, 2016 WL 347339, at *32 (N.D.N.Y. Jan. 28, 2016) ). It is therefore recommended that Plaintiff's second cause of action

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

be **dismissed with leave to replead** as a pendent state law claim.

### 3. Abuse of Process

"[A]buse of criminal process is actionable under section 1983 as a denial of procedural due process." *Sullivan v. LaPlante*, 2005 WL 1972555, at *3 (N.D.N.Y. Aug. 16, 2005) (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) ). The underlying litigation in this case, however, is civil in nature. *Southerland v. Woo*, 44 F. Supp. 3d 264, 282 (E.D.N.Y. 2014), *aff'd*, 661 Fed. Appx. 94 (2d Cir. 2016). It is unclear whether an abuse of process claim relating to a family court proceeding can give rise to a cause of action under section 1983. *See, e.g., Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992); *Cook v. Sheldon*, 41 F.3d at 79-80.

Under either New York or federal law, "a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d at 80. Without the element of collateral purpose, no abuse of process claim is stated. *Mortimer v. City of New York*, 2018 WL 1605982, at *23 (S.D.N.Y. Mar. 29, 2018) ("[W]hile Plaintiffs attack the validity of [the Family Court] proceedings, they do not state that either was brought for a purpose other than removal of [the child] from the home."). Here, the Amended Complaint alleges in conclusory terms that the actions of the Defendants in favor of the maternal grandmother were for a collateral purpose other than in support of her request for custody, which was the purpose of the Family Court proceeding. *See* Am. Compl. at ¶ 482. Such conclusory allegations cannot suffice to satisfy the pleading requirements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678. Accordingly, it is recommended that Plaintiff's Third Cause of Action should be **dismissed with leave to replead**.

### 4. Fourth Amendment Violation

**\*9** The fourth cause of action is limited to a claim against Defendant Sarah Raymond, alleging a violation of Plaintiff's Fourth Amendment rights based upon an alleged illegal entry into the LeClair apartment; and a separate Fourth Amendment claim against Defendant Vinson arising out of the alleged

unlawful removal of Plaintiff's children from Plaintiff's care and custody. Am. Compl. at ¶¶ 486-494. The Court finds that the allegations in the Amended Complaint are sufficient to warrant a response as to the illegal entry claim. However, as to the seizure claim involving the children, that claim cannot proceed in the present action as "Fourth Amendment rights are personal rights which ... may not be asserted vicariously." *Alderman v. United States*, 394 U.S. 165, 174 (1969); *Southerland v. City of New York*, 680 F.3d 127, 143 (2d Cir. 2011) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent ..."); *Graham v. City of New York*, 869 F. Supp. 2d 337, 355 (E.D.N.Y. 2012) ("[P]arents do not have their own Fourth Amendment right to be free from a child's court-approved removal."). As noted above, Plaintiff is proceeding *pro se* and therefore cannot pursue claims on behalf of his minor children. The Court therefore recommends that the Fourth Amendment claims of the children be **dismissed without prejudice** to be re-filed only when the children are properly represented.

### 5. Coercive interview

Plaintiff's final section 1983 claim is based upon allegedly coercive interviews performed by Defendants Sarah Raymond and Terra Cahill. Am. Compl. at ¶¶ 495-499. In *Cavaez v. Martinez*, the Supreme Court rejected such a claim asserted under the Fifth Amendment, because plaintiff "was never made to be a 'witness' against himself in violation of the Fifth Amendment's Self-Incrimination Clause because his statements were never admitted as testimony against him in a criminal case. Nor was he ever placed under oath and exposed to the cruel trilemma of self-accusation, perjury or contempt." 538 U.S. 760, 767 (2003) (internal quotation marks omitted) (citations omitted). The Amended Complaint likewise does not allege that any statements of Mr. LeClair were used in a criminal proceeding. Courts have, however, allowed a coercive interview claim to proceed in the family court context under a substantive due process violation theory. Under such an analysis, defendants can be liable if they "used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." *Zahrey v. City of New York*, 2009 WL 54495, at *12 (S.D.N.Y. Jan. 7, 2009) (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001), *amended on reconsideration in part*, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009) ). Such a claim is the type asserted here. However, this theory of a substantive due process violation has already been asserted in the first

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 1300547

cause of action of the Amended Complaint, and therefore it is recommended that the fifth cause of action be **dismissed without prejudice** as duplicative of the first.

### F. John Doe Defendants

"A complaint in a civil rights action is subject to dismissal against a defendant for failure to state a claim on initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) where a defendant named in the caption is not mentioned in the factual allegations in the body of the complaint." *Cruz v. New York*, 2017 WL 6021838, at *16 (N.D.N.Y. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 6001833 (Dec. 4, 2017) (collecting cases).

Plaintiff names Does 1-10 as Defendants in the caption of his Amended Complaint. Am. Compl. at p. 1. However, he does not provide any allegations regarding these individuals in the body of the Amended Complaint. As such, the Court recommends **dismissing Does 1-10 without prejudice**.

### III. CONCLUSION

Unless specifically stated otherwise, several of the above recommendations of dismissal are based primarily on pleading deficiencies and not necessarily on the viability of the claims intended to be stated. Although the Court recommends dismissal of such claims and Defendants, alternatively, in light of Plaintiff's *pro se* status, the Court recommends that on some of these claims that prior to outright dismissal of this action, the Court should afford him the opportunity to file another amended complaint if he desires to proceed. Should Plaintiff be directed by the District Judge to file a second amended complaint, I offer the following guidance. Any such second amended complaint, **which shall supersede and replace in its entirety the previous Amended Complaint filed by Plaintiff**, must contain a caption that clearly identifies, by name, each individual that Plaintiff is suing in the present lawsuit and must bear the case number assigned to this action. The body of Plaintiff's second amended complaint must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct;

(ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

**\*10** Importantly, any such pleading must be "**concise and direct**." FED. R. CIV. P. 8(d) (emphasis added). [6]

> [6]   The Amended Complaint is 206 pages and 499 paragraphs, and does not comply with this requirement.

Plaintiff's second amended complaint shall also assert claims against each and every defendant named in such complaint; **any defendant not named in such pleading shall not be a defendant in the instant action**. Plaintiff is further cautioned that no portion of any prior complaint shall be incorporated into his second amended complaint by reference. **Plaintiff shall state in the single amended complaint all claims that he wishes this Court to consider as a basis for awarding Plaintiff relief herein; his failure to file such a pleading will result in dismissal of this action without further Order of the Court.**

Finally, if Plaintiff does not obtain counsel for his children, he should remove all claims asserted on behalf of his minor children in any further amended complaint.

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Amended Complaint (Dkt. No. 4) be **DISMISSED WITH PREJUDICE** as against Defendants Katherine Thompson and Garfield Raymond; and it is further

**RECOMMENDED**, that Plaintiff's claims against Defendant Vinson be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that insofar as the *pro se* Second Amended Complaint seeks to assert claims on behalf of his two infant children, that such claims be **DISMISSED WITHOUT PREJUDICE,** but shall not be repled until the minors are properly represented by counsel; and it is further

**RECOMMENDED**, that Plaintiff's first cause of action alleging a Due Process violation under 42 U.S.C. § 1983 against Defendants S. Raymond, Colon, Lord, Breen, Cahill,

Hoerter and Warren County, for alleged interference with the Plaintiff's rights to custody of his children based upon the use of false, fraudulent, or coerced evidence only, **BE ALLOWED TO PROCEED**, but that the due process claim alleging that the Defendants failed to affirmatively take action to stop the alleged abuse by the grandmother or her son, be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that as to Plaintiff's second cause of action, his section 1983 claim for intentional infliction of emotional distress be **DISMISSED WITH PREJUDICE** but that his pendent state law claim be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that Plaintiff's third cause of action based upon an alleged abuse of process be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that Plaintiff's fourth cause of action for a violation of the Fourth Amendment be allowed to proceed insofar as it alleges that Defendant S. Raymond illegally entered Plaintiff's apartment, but **DISMISSED WITHOUT PREJUDICE** as to the claim that Plaintiff's children were illegally detained, which claim can only be asserted by the children at the point that they are properly represented; and it is further

**RECOMMENDED**, that the Plaintiff's fifth cause of action be **DISMISSED WITHOUT PREJUDICE** as duplicative of the Plaintiff's first cause of action; and it is further

 **\*11 RECOMMENDED**, that the Amended Complaint be **DISMISSED WITHOUT PREJUDICE** as to Does 1-10; and it is further

**RECOMMENDED**, that in the event these recommendations are adopted by the District Judge and the case is approved to proceed against Defendants S. Raymond; Colon; Lord; Breen; Cahill; Hoerter and Warren County, the Clerk shall return the matter to the undersigned so that an Order can be issued regarding service by the Marshal; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 1300547

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

2019 WL 2723478

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 35 of 49

2019 WL 2723478
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Nicholas LECLAIR and Minors I.L. and S.L., Plaintiffs,
v.
Jessica VINSON, et al., Defendants.

1:19-cv-0028 (BKS/DJS)
|
Signed 07/01/2019

**Attorneys and Law Firms**

Plaintiff pro se: Nicholas LeClair, Chestertown, New York.

**MEMORANDUM-DECISION AND ORDER**

Hon. Brenda K. Sannes, United States District Judge:

**I. INTRODUCTION**

**\*1**  Plaintiff pro se Nicholas LeClair brought this action, on behalf of himself and minors I.L. and S.L., against defendants on January 7, 2019. (Dkt. Nos. 1, 4). This matter was referred to United States Magistrate Judge Daniel J. Stewart who, on March 21, 2019, issued a Report Recommendation and Order recommending that: (1) Plaintiff's Amended Complaint be dismissed with prejudice as against Defendants Katherine Thompson and Garfield Raymond; (2) Plaintiff's claims against Defendant Vinson be dismissed without prejudice; (3) that insofar as the Amended Complaint seeks to assert claims on behalf of Plaintiff's two infant children, that such claims be dismissed without prejudice; (4) that Plaintiff's first cause of action alleging a due process violation under 42 U.S.C. § 1983 against Defendants S. Raymond, Colon, Lord, Breen, Cahill, Hoerter and Warren County, for alleged interference with the Plaintiff's rights to custody of his children based upon the use of false, fraudulent, or coerced evidence only, be allowed to proceed, but that the due process claim alleging that the Defendants failed to affirmatively take action to stop the alleged abuse by the grandmother or her son, be dismissed with prejudice; (5) that Plaintiff's second cause of action under § 1983 for intentional infliction of emotional distress be dismissed with prejudice but that his pendent state law claim be dismissed without prejudice; (6) that Plaintiff's third cause of action based upon an alleged abuse of process be dismissed without prejudice; (7) that Plaintiff's fourth cause of action for a violation of the Fourth Amendment be allowed to proceed

insofar as it alleges that Defendant S. Raymond illegally entered Plaintiff's apartment, but dismissed without prejudice as to the claim that Plaintiff's children were illegally detained; (8) that the Plaintiff's fifth cause of action be dismissed without prejudice as duplicative of the Plaintiff's first cause of action; and (9) that the Amended Complaint be dismissed without prejudice as to Doe Defendants 1–10. (Dkt. No. 7, at 26–27).

Plaintiff has filed an objection to the Report Recommendation, objecting to Magistrate Judge Stewart's recommendation that his claims against law clerk Garfield Raymond be dismissed with prejudice based on judicial immunity. (Dkt. No. 8). For the reasons set forth below, the Report Recommendation is adopted in its entirety.

**II. STANDARD**

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue*, 2 F. Supp. 3d 223, 228–29 (N.D.N.Y. 2012); 28 U.S.C. § 636(b)(1)(C). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.*

**III. DISCUSSION**

Plaintiff's claims arise out of a contentious child custody dispute before Warren County Family Court Judge Ted Wilson. According to the Amended Complaint, public defender Glenn Liebert was appointed to represent Plaintiff, but Plaintiff was dissatisfied with Liebert's representation. (Dkt. No. 4, ¶¶ 54, 63, 79–80, 98–99, 106, 131, 136, 142, 156–57, 178, 249). Plaintiff asserts that he "officially fired Liebert on June 18, 2018 in an email" to the court and all parties, and began proceeding as a pro se litigant. (*Id.* ¶ 179). Plaintiff subsequently filed a motion to dismiss Liebert. (*Id.* ¶ 180). The Warren County Clerk, however, told Plaintiff that Judge Wilson "would only grant the motion if it was submitted by Glenn Liebert." (*Id.* ¶ 192). Judge Wilson refused to let Plaintiff represent himself pro se. (*Id.* ¶¶ 239, 247).

**\*2**  At some point, Liebert served Plaintiff with a motion to dismiss himself from the case, and Plaintiff drafted a reply, agreeing with Liebert's request for dismissal. (*Id.* ¶¶ 243, 245, 249). On July 10, 2018, Plaintiff attempted to file his reply with the court. (Dkt. 4, at 90). Judge Wilson's law clerk, Garfield Raymond, however, ordered the clerk at the filing window not to accept Plaintiff's document for filing. (Dkt. No.

LeClair v. Vinson, Not Reported in Fed. Supp. (2019)

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 36 of 49

2019 WL 2723478

4, at 90, ¶ 12). The clerk then "threw away the copy of the motion in the trash and whited out the time stamp and then drew an 'X' on the original and returned it to" Plaintiff. (Dkt. No. 4, at 90). According to Plaintiff, his motion seeking his attorney's dismissal was "literally thr[o]w[n] ... in the trash right infront [sic] of him," and the document was "never allowed on the record by Warren County Family Court." (*Id.*). Later, at a hearing on July 16, 2018, Judge Wilson refused to dismiss Liebert from the case. (Dkt. No. 4, ¶¶ 273–75).

Plaintiff has asserted civil rights claims against law clerk Garfield Raymond under 42 U.S.C. § 1983, alleging, *inter alia*, that Raymond violated Plaintiff's right to due process. (*Id.* at 175–195). Magistrate Judge Stewart recommended that these claims be dismissed with prejudice because judicial immunity extends to the judicial law clerk "who is considered an extension of the judge at whose pleasure he serves." (Dkt. No. 7, at 17).

Plaintiff "objects to Garfield Raymond being given absolute immunity for his conduct on July 10, 2018." (Dkt. No. 8, at 12). Having reviewed this issue *de novo*, the Court agrees with Magistrate Judge Stewart's recommendation. A law clerk "assisting the judge in carrying out judicial functions [is] covered by the doctrine of absolute immunity." *Oliva v. Heller*, 839 F.2d 37, 40 (2d Cir. 1988). While Plaintiff argues that judicial immunity "cannot extend to the independent act by a law clerk of intentionally destroying documents or withholding documents from the judge or jury without the judge's knowledge," there are no such facts alleged here. (Dkt. No. 8, at 3). Raymond is alleged to have rejected a document for filing by a litigant represented by counsel. "A court's inherent power to control its docket is part of its function of resolving disputes between parties," and actions by court staff in furtherance of docket control are part of that judicial function. *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997); *see, e.g., Charles v. O'Garro*, No. 18-cv-0729, 2018 WL 2926307, at *3, 2018 U.S. Dist. LEXIS 97419, at *5-6 (D. Conn. June 11, 2018) (ruling that court clerk who allegedly failed to file documents provided to him on the plaintiff's behalf is entitled to qualified immunity); *Peker v. Steglich*, 324 Fed. App'x 38, 39–40 (2d Cir. 2009) ("folding, filing, and storing" exhibits is "a task that was basic and integral to the judicial function," and the clerk alleged to have done so negligently is protected by judicial immunity). Raymond was assisting the judge in carrying out a judicial function and was therefore covered by absolute immunity. *Oliva*, 839 F.2d at 39–40. [1]

[1] The Louisana state case on which Plaintiff relies, *Palowsky v. Campbell*, 249 So. 3d 945 (La. App. 1 Cir. 4/11/18), is not applicable here. Federal law of immunity applies to Plaintiff's claims under 42 U.S.C. § 1983. *Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010). Moreover, the Court notes that defendant Raymond's rejection of Plaintiff's document for filing is not analogous to the intentional concealment or destruction of court records alleged in *Palowsky*. *See Palowsky*, 249 So. 3d at 958 (finding that the plaintiff "has stated a cause of action against [the law clerk] insofar as he has asserted the intentional concealment or destruction of documents from the court outside of any directive from a judge").

The Court has reviewed the remainder of Magistrate Judge Stewart's thorough Report Recommendation for clear error and found none. Accordingly, the Court adopts the Report Recommendation in its entirety for the reasons stated therein.

## IV. CONCLUSION

**\*3** For these reasons, it is hereby

**ORDERED** that Magistrate Judge Stewart's Report Recommendation (Dkt. No. 7) is **ADOPTED** in all respects; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **DISMISSED WITH PREJUDICE** as against Defendants Katherine Thompson and Garfield Raymond; and it is further

**ORDERED** that Plaintiff's claims against Defendant Vinson are **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that insofar as the pro se Amended Complaint seeks to assert claims on behalf of his two infant children, that such claims are **DISMISSED WITHOUT PREJUDICE**, and shall not be repled until the minors are properly represented by counsel; and it is further

**ORDERED** that Plaintiff's first cause of action alleging a Due Process violation under 42 U.S.C. § 1983 against Defendants S. Raymond, Colon, Lord, Breen, Cahill, Hoerter and Warren County, for alleged interference with the Plaintiff's rights to custody of his children based upon the use of false, fraudulent, or coerced evidence only, are allowed to proceed, but that the due process claim alleging that the Defendants failed to affirmatively take action to stop the alleged abuse

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 37 of 49

**LeClair v. Vinson, Not Reported in Fed. Supp. (2019)**
2019 WL 2723478

by the grandmother or her son, is **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED** Plaintiff's § 1983 claim in his second cause of action, for intentional infliction of emotional distress, is **DISMISSED WITH PREJUDICE** but with leave to replead it as a pendent state law claim; and it is further

**ORDERED** that Plaintiff's third cause of action based upon an alleged abuse of process is **DISMISSED WITHOUT PREJUDICE**; and it is further

**ORDERED** that Plaintiff's fourth cause of action for a violation of the Fourth Amendment is allowed to proceed insofar as it alleges that Defendant S. Raymond illegally entered Plaintiff's apartment, but is **DISMISSED WITHOUT PREJUDICE** as to the claim that Plaintiff's children were illegally detained, which claim can only be asserted by the children once they are properly represented; and it is further

**ORDERED** that the Plaintiff's fifth cause of action is **DISMISSED WITHOUT PREJUDICE** as duplicative of the Plaintiff's first cause of action; and it is further

**ORDERED** that the Amended Complaint is **DISMISSED WITHOUT PREJUDICE** as to Doe Defendants 1–10; and it is further

**ORDERED** that the Clerk shall return the matter to Magistrate Judge Stewart so that an Order can be issued regarding service by the Marshal; and it is further

**ORDERED** that the Clerk serve a copy of this Order on the Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2723478

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

Harmon v. Runyon, Not Reported in F.Supp. (1997)
1997 WL 118379

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 38 of 49

1997 WL 118379
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jeanette HARMON, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General,
United States Postal Service, Defendant.

No. 96 CIV. 6080(SAS).
|
Mar. 17, 1997.

**Attorneys and Law Firms**

Jeanette Harmon, pro se.

Aaron Katz, Asst. U.S. Atty., New York, N.Y., for Defendant.

*MEMORANDUM ORDER*

SCHEINDLIN, District Judge.

**\*1** On August 12, 1996, plaintiff filed this action pursuant to 42 U.S.C. §§ 2000e to 2000e–17 and § 29 U.S.C. §§ 621 to 634 for employment discrimination on the basis of her age, race and gender. On November 21, 1996, plaintiff applied for the appointment of counsel on the grounds that she lacks sufficient knowledge of the law to continue to maintain her claims *pro se*. For the reasons set forth below, plaintiff's application for appointment of counsel is denied with leave to renew.

Discussion As an initial matter, there is no constitutional right to appointed counsel in civil cases. Moreover, due to the scarcity of volunteer attorneys, the Second Circuit has cautioned against the routine appointment of *pro bono* counsel in civil cases. *See Cooper v. A.*

*Sargenti Co. Inc.,* 877 F.2d 170, 172 (2d Cir.1989). In *Hodge v. Police Officers,* 802 F.2d 58, 61–62 (2d Cir.1986), *cert. denied,* 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 620 (1991), the Second Circuit set forth the factors courts should consider in deciding whether to grant a *pro se* plaintiff's request for the appointment of counsel. As a threshold requirement, the court must decide whether the plaintiff's claim "seems likely to be of substance." *Hodge,* 802 F.2d at 61. If the plaintiff meets this requirement, the court must next consider factors including:

the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

Id. at 61–62. As plaintiff is not indigent, the court is also required to consider plaintiff's efforts to obtain a lawyer. *Cooper,* 877 F.2d at 172, 174.

In the instant case, plaintiff has not met the threshold requirement set forth in *Hodge*. Plaintiff has presented no evidence whatever to support her claims regarding defendant's allegedly improper actions. Without presenting any evidence to support her claims, Harmon cannot meet the first requirement of the *Hodge* test described above. Accordingly, plaintiff's application is denied.

Given the early stage of these proceedings, it is possible that plaintiff eventually will be able to provide some evidence to support her claims. Plaintiff's application is therefore denied with leave to renew. If plaintiff wishes to apply again for the appointment of counsel, she must make some attempt to refer to evidence which supports her claims.

SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1997 WL 118379

**End of Document**                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 39 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)
2017 WL 9487185

2017 WL 9487185
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francis AMATO, et al., Plaintiffs,
v.
Judge Anthony MCGINTY, et al., Defendants.

1:17-CV-593 (MAD/ATB)
|
Signed 06/06/2017

**Attorneys and Law Firms**

Frances Amato, Marlboro, NY, pro se.

John Doe, pro se.

Adrienne Auchmoody, pro se.

Toni Jean Kulpinski, pro se.

Vladimir Kulpinski, pro se.

Michaela Kulpinski, pro se.

Michelle Arzola, pro se.

Jane Doe, pro se.

Adrienne J. Kerwin, Office of Attorney General, David B. Cabaniss, Cabaniss Casey LLP, Albany, NY, for Defendants.

**ORDER and REPORT-RECOMMENDATION**

Hon. Andrew T. Baxter, U.S. Magistrate Judge

*1  The Clerk has sent to the Court a civil rights complaint filed by pro se plaintiffs Francis Amato, her son "John Doe," Adrienne Auchmoody, Toni Jean Kulpinski, Vladimir Kulpinski, Michaela Kulpinski, Michelle Arzola, and Ms. Arzola's two children, who have also been referred to as Jane and John Doe. (Complaint ("Compl.") at 1). Plaintiffs have paid the filing fee for this action. However, the court will conduct an initial review of the complaint. [1] Plaintiff Amato has also filed a motion to obtain an ECF Login and Password. (Dkt. No. 10).

[1]      The court notes that on June 2, 2017, plaintiff Amato filed a motion for a Temporary Restraining

Order. (Dkt. No. 8). District Judge D'Agostino denied the motion on the same day. (Dkt. No. 9).

A complaint must allege " 'enough facts to state a claim to relief that is plausible on its face.' " *Preacely v. City of New York*, 622 Fed.Appx. 14, 15 (2d Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). A claim " 'has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ). A case is "frivolous" when either the factual contentions are "clearly baseless or when the claim is based upon "an indisputably meritless legal theory." " *Id.* (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ). A district court has inherent authority to dismiss a frivolous action sua sponte "even when the plaintiff has paid the required filing fee." *Id.* (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ). Finally, a federal court has a continuing and independent obligation to examine its subject matter jurisdiction sua sponte. *Robbins v. City of New York*, 254 F.Supp.3d 434, 436 (E.D.N.Y. 2017) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ). *See also Forde v. Hornblower New York, LLC*, 243 F.Supp.3d 461, ——, 2017 WL 1078585, at *2 (S.D.N.Y. 2017) (citations omitted).

**I. Complaint**

This civil rights action has been brought by plaintiffs Frances Amato, her son ("CB"), Adrienne Auchmoody (CB's grandmother), Toni Jean Kulpinski (CB's Aunt and Godmother), Vladimir Kulpinski (CB's Uncle and Godfather), Michaela Kulpinski (CB's cousin), and Michelle Arzola and her two minor children (CB's sister, niece, and nephew). (Compl. ¶¶ 1-7).

Plaintiffs appear to challenge the conduct of defendant Ulster County Family Court Judge Anthony McGinty relative to a custody proceeding involving CB. (Compl. ¶¶ 8, 16). Plaintiffs have also named Attorney Andrew Gilday, who plaintiffs state is a "Public Defender," but appears to be the assigned counsel for Patrick Bessmer—CB's father [2]—in the custody proceeding. (Compl. ¶ 9). Patrick Bessmer and his alleged "paramour," Pamela Augustine are also named as defendants. (Compl. ¶¶ 11, 12). Plaintiffs have also named Amy Ingram, Esq., CB's assigned attorney for the custody proceeding.

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 40 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

[2]     Plaintiff Amato and defendant Patrick Bessmer were apparently not married.

**\*2** Plaintiffs allege that defendant McGinty was "highly abusive" to "all" plaintiffs; violated "constitutional" and "ADA rights;" caused "extreme pain, suffering, and trauma to "all" plaintiffs when he violated their constitutional rights; endangered the welfare of "a child;" and "illegally extended fictitious authority in CLEAR ABSENCE of subject matter jurisdiction." " (Compl. ¶ 18(a)-18(e) ). Plaintiff Amato then describes conduct that was allegedly directed at her. [3] (Compl. ¶ 20). Plaintiff Amato alleges that defendant McGinty denied access to " 'his court,' " denied plaintiff Amato her "rights to proper serving process," denied "any evidence into the court for purpose of record," and denied "the serious risk and harm to [her] child- who is currently and not by [her] consent in public governmental counseling for high risk children." (Compl. ¶ 20). Plaintiff Amato believes that the state proceedings "remain plagued by retributions [sic] for plaintiff's exercise of First Amendment rights to free speech and petition government [sic] for redress of grievances." (Compl. ¶ 19).

[3]     The court notes that, although there are multiple plaintiffs, most of the defendants' alleged conduct was directed at plaintiff Amato alone. Plaintiff Amato appears to allege that the defendants' conduct toward her and CB injured the other defendants because of their family relationship to plaintiff Amato and CB. (*See* Compl. ¶ 45) (stating that "no parties had a due process court hearing or trial, [and] were never served any form of order").

Plaintiff Amato alleges that she is an "outspoken advocate," working along side the District Attorney of Ulster County to compile evidence and to file numerous complaints against defendant McGinty. (*Id.*) Plaintiff Amato states that she has been interviewed by many local newspapers and television stations regarding her concerns about Ulster County Family Court and attorney Amy Ingram. Plaintiff claims she has been "very outspoken" regarding the "countless children" endangered by the "decisions of these judges and the negligence of these public servants and child attorneys mentioned [in the complaint.]" (*Id.*)

Plaintiff Amato lists a series of alleged violations which were committed by defendant McGinty, together with defendants Ingram and Gilday, resulting in the "kidnaping" and "endangerment of a minor." (Compl. ¶ 22). [4] Plaintiff Amato

states that these three defendants intentionally inflicted emotional distress by removing her child, "altering the 9 year status quo from me and my entire family, violating **our** due process...." (Compl. ¶ 22(a) ). These three defendants also allegedly committed "Malicious Trespass," "Abuse of Process," "Retaliation," "False and Unlawful Arrest," "Pre decided trial with no evidence allowed, Obstructing Justice," "Child Endangerment," and "Falsely placing mother and child on a missing persons clearinghouse...." (Compl. ¶ 22(b)-22(h) ).

[4]     There appears to be no ¶ 21 in the complaint.

The complaint contains three "Causes of Action," which contain additional facts and various citations to case law. (Compl. ¶¶ 30-41). The first cause of action is "First Amendment." (Compl. ¶¶ 30-33). The second cause of action is "Parental Impairment," and the third cause of action is "Due Process." (Compl. ¶¶ 34-37, 38-41). Because of the way that the complaint is written, rather than repeating all of the facts, the court will discuss the additional facts as necessary to the analysis of plaintiff's complaint.

## II. <u>Judicial Immunity</u>

### A. Legal Standards

With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. *Mireles v. Waco*, 502 U.S. 9, 9-10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "at liberty to exercise their functions with independence and without fear of consequences." *Huminski v. Corsones*, 396 F.3d 53, 74 (2d Cir. 2004). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Imbler v. Pachtman*, 424 U.S. 409, 419 n.12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing *Pierson v. Ray*, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) ). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The only two circumstances in which judicial immunity does not apply is when he or she takes action "outside" his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12, 112 S.Ct. 286.

**\*3** Injunctive relief against judges is also barred "unless a declaratory decree was violated or declaratory relief

2017 WL 9487185

was unavailable." *Bobrowski v. Yonkers Courthouse*, 777 F.Supp.2d 692, 711 (S.D.N.Y. 2011) (citing inter alia *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999) (per curiam) ). Although fairness and injustice may result on occasion, a judicial officer must be free to act on his or her own convictions in exercising the authority vested in him or her, "without apprehension of personal consequences...." *Id.* (citing inter alia *Mireles*, 502 U.S. at 10, 112 S.Ct. 286).

Whether an act by a judge is a "judicial one" relates to the "nature of the act itself"—whether it is a function that is necessarily performed by a judge. *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) ). The parties must have dealt with the judge in his or her "judicial capacity." *Id.* The court acts in "absence of all jurisdiction" when "it does not have any statutory or constitutional power to adjudicate the case." *Id.* (citing *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) ). The judge will not be deprived of absolute immunity if he or she takes action that is merely "in excess" of his or her authority. *Id.* (citing *Mireles*, 502 U.S. at 12-13, 112 S.Ct. 286).

### B. Application

Plaintiffs have named Ulster County Family Court Judge Anthony McGinty as a defendant. Plaintiff states that the "defendants" have violated "clearly established laws." (Compl. ¶ 31). Plaintiffs allege that defendant McGinty is biased, discriminates against women who are victims of domestic violence, and has retaliated against plaintiff Amato because she has spoken out against him and other Family Court judges, staff, and appointed counsel for her child.

Plaintiffs claim that the "federal funding law" rewards "states and judicial agents," based on the "number and size of child support orders." (Compl. ¶ 32). Based on this "fact," plaintiffs state that a "financial bias has impaired fair and proper consideration of plaintiff's claims and defenses in the challenged proceedings." However, all of Judge McGinty's alleged "biased" or "illegal" conduct was taken in connection with his position as a Family Court judge presiding over plaintiff Amato's custody case. Whether the judge's conduct involved issuing orders based on "funding," allegedly biased decisions in favor of defendant Bessmer, or making decisions that were not in the best interest of CB, these were all actions taken in the course of a custody proceeding in his capacity as a Family Court Judge. Thus, Judge McGinty is entitled to judicial immunity.

Plaintiff attempts to argue that Judge McGinty acted "in absence" of jurisdiction because he took over plaintiff's custody case from another judge in violation of N.Y. Judiciary Law § 21. (Compl. ¶ 18). Plaintiff Amato's argument is misplaced. N.Y. Judiciary Law § 21 reads as follows:

> A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.

N.Y. Jud. Law § 21. This means that a trial-level judge shall not decide factual issues that were tried before a different judge. *See People v. Hampton*, 21 N.Y.3d 277, 284-85, 970 N.Y.S.2d 716, 992 N.E.2d 1059 (2013). This applies to situations in which the new judge is called upon to make rulings based on an evaluation of testimony that he or she did not hear. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. It does not apply to motions involving pure issues of law. *Id.* at 285, 970 N.Y.S.2d 716, 992 N.E.2d 1059. This also does not mean that a judge cannot take over a custody case, or any other action, after another judge has recused herself. *See id.* Otherwise, no judge could ever be replaced after a case has begun.

**\*4** Plaintiff does not allege that there were motions pending that the previous judge did not address when Judge McGinty took over the case. In fact, the complaint indicates that Judge McGinty presided over the challenged proceedings himself. (Compl. ¶ 22(f) ). Plaintiff Amato states that Judge McGinty "pre-decided" the trial with no evidence allowed. (*Id.*) Plaintiff Amato states that defendant McGinty "struck from the record anything that was pertinent to the safety of the child and mother...." (*Id.*) Finally, plaintiff alleges that defendant McGinty and defendants Gilday and Ingram held a "mock trial." (*Id.*) Thus, the judge heard the factual issues in question, and plaintiff has not alleged a violation of Judiciary Law § 21.

In any event, even if the judge acted in violation of Judiciary Law § 21, the appropriate remedy in state court would be remand to the same judge for his or her own hearing of the issue and a subsequent decision. *Id.* at 286, 970 N.Y.S.2d 716, 992 N.E.2d 1059. Although the state court has referred

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 42 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)
2017 WL 9487185

to this statute as "jurisdictional," it is only with respect to the particular decision that the judge made without hearing the evidence him or herself. *Id.* It does not deprive the court of "jurisdiction" over custody cases. Judge McGinty was still a family court judge with jurisdiction over custody matters. At worst, if Judge McGinty decided a motion or issue improperly, he would have been acting "in excess" of jurisdiction, and he would still be entitled to judicial immunity.

Plaintiffs challenge rulings by Judge McGinty and complain of the way that he managed his courtroom, allegedly "denying access to what the judge called 'his court.' " (Compl. ¶ 20). Judge McGinty allegedly placed CB in "governmental counseling for high risk children" without plaintiff Amato's consent, "denied evidence ... for purpose of record; and "falsely" placed plaintiff Amato and CB on a "missing persons clearinghouse." " (Compl. ¶¶ 20, 22(h) ). Plaintiffs allege that on January 31, 2017, defendant McGinty "issued a directive to plaintiff [Amato] under penalty of imprisonment .... sixty days in county jail on a civil offense of a woman with no background at all because she wanted to protect her child from further addiction and domestic violence." (Compl. ¶ 24). Plaintiff Amato alleges that the court mocked her and endangered CB with its rulings. (*Id.*) Plaintiff Amato also claims that a "stay" was granted by the Appellate Division, which ordered plaintiff's immediate release from the Ulster County Jail "false arrest and abuse of power." (*Id.*)

Notwithstanding plaintiffs' allegations that the Judge made improper adverse rulings against plaintiff Amato during the custody proceeding with malice or in retaliation for her "exposing" abuses in Family Court, the judge was still performing judicial functions and presiding over plaintiff's custody action. As stated above, a judge does not lose his or her judicial immunity because he or she is accused of acting with malice or corruptly.

In *Koziol v. King,* the plaintiff sued a variety of judges in connection with custody and support proceedings. *Koziol v. King,* No. 6:14-CV-946, 2015 WL 2453481 (N.D.N.Y. May 22, 2015). In *Koziol,* then-Chief District Court Judge Gary Sharpe dismissed claims against County Court Judge King which related primarily to visitation and custody orders in matters pending before him, based on absolute immunity. *Id.* at *8. Plaintiff Koziol had also challenged that way that Judge King "managed his courtroom." *Id.*

In dismissing the claims against Judge King, Judge Sharpe cited *Davis v. Kushner,* No. 1:14-CV-511, 2014 WL 5308142, at *5 (N.D.N.Y. Oct. 16, 2014), in which the court held that a family court judge was protected by judicial immunity where the plaintiff alleged that the judge denied him custodial and visitation rights because he was a Muslim, which violated his civil rights. Thus, judicial immunity is not lost because plaintiff alleges that the judge's decision was unconstitutional. Plaintiffs in this case disagree with the judge's decisions. (Compl. ¶ 29). Plaintiff Amato quotes the judge's order awarding custody to defendant Bessmer, and states that the judge did not properly consider CB's father's drug dealing, drug abuse, arrests, domestic violence, and probation violations. (*Id.*)

**\*5** Plaintiff Amato also states that defendant McGinty abused his authority when he issued an order of protection without "a trial or hearing," and subjected plaintiff Amato to supervised visitation, allegedly contrary to New York law. (Compl. ¶ 35). Plaintiff discusses the proper procedure for "imposing supervised visitation," and faults the judge as well as the other defendants for imposing such restrictions on her. However, these decisions are also within the purview of the Family Court Judge. Even if the judge was incorrect in imposing the alleged restrictions to plaintiff Amato's visitation, it would not deprive Judge McGinty of judicial immunity.

Plaintiff Amato clearly has issues with the Family Court system and claims that the system has been abused by Judge McGinty. The complaint also contains two paragraphs which refer to "financially based custody laws" and states that "Plaintiff" seeks an order declaring Sections 236 and 240 of the Domestic Relations Law unconstitutional. (Compl. ¶¶ 36). Judge McGinty's application of the laws that he has jurisdiction to interpret does not deprive him of judicial immunity, even if those laws were unconstitutional. The constitutionality of state statutes is an issue separate from judicial immunity. [5]

[5]    Although plaintiffs' complaint asks that two sections of New York Domestic Relations Law be declared "unconstitutional," the court must first note that, to the extent that the claim could be asserted at all, it could only be asserted by plaintiff Amato because she is the only plaintiff who has been a party to the custody proceedings and to whom the statute would have been applied. In addition, none of the individuals

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

named as defendants are proper defendants in such an action. Finally, in cases involving Domestic Relations issues, the court must afford the state court appropriate deference in light of ongoing proceedings involving the plaintiff. *See Kahn v. Shaiswit*, 414 F.Supp. 1064, 1068 (S.D.N.Y. 1976) (dismissing an action by plaintiff husband in a divorce matter in which he challenged the constitutionality of New York Domestic Relations Law § 239). The court in *Kahn* cited *Mendez v. Heller*, 530 F.2d 457 (2d Cir. 1976), in which Judge Oakes stated in a concurring opinion, that " 'probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern.' " *Id.* at 1067 (quoting *Mendez*, 530 F.2d at 461). Thus, to the extent that plaintiff Amato may be attempting to challenge the constitutionality of sections of the New York Domestic Relations Law, the claim may be dismissed.

Plaintiff Amato claims in her third cause of action that she was denied the right to a "rational, orderly and timely court proceeding before a neutral and detached magistrate or judge." (Compl. ¶ 39). This is clearly an action that is judicial in nature, and Judge McGinty would be entitled to judicial immunity for any such claim. The same is true for plaintiff's state law claims of intentional and negligent infliction of emotional distress. Thus, plaintiffs'[6] complaint must be dismissed as against defendant McGinty.

[6]    Judicial immunity applies to shield Judge McGinty's liability as to all the plaintiff's, although plaintiff Amato is generally the plaintiff to whom the complaint refers. Plaintiff Amato appears to attempt to include the other plaintiffs by stating that they did not get "hearings," they do not appear to have been parties to the custody case. To the extent that any of the other "plaintiffs," uncle, aunt, grandmother, sister, niece and nephew had dealings with Judge McGinty, it was only in connection with the custody action, and the judge is entitled to absolute immunity no matter who the plaintiff is.

**\*6** It has also been held that law guardians are entitled to absolute quasi-judicial immunity for their actions in representing children in Family Court. *Davis v. Kushner*, No. 1:14-CV-511, 2014 WL 5308142, at \*5 (N.D.N.Y. Oct. 16, 2014) (citing inter alia *Yapi v. Kondratyeva*, 340 Fed.Appx. 683, 685 (2d Cir. 2009) (citations omitted) ); *Holland v.*

*Morgenstern*, No. 12-CV-4870, 2013 WL 2237550, at \*4 (E.D.N.Y. May 20, 2013) (citations omitted); *Lewittes v. Lobis*, No. 04 Civ. 155, 2004 WL 1854082, at \*11 (S.D.N.Y. Aug. 19, 2004) (citations omitted). In *Lewittes*, the court held that the plaintiff would have other available remedies if the child's attorney were derelict in performing his or her duties. 2004 WL 1854082, at \*12. This holding is supported by New York State court decisions holding that such guardians are protected by quasi-judicial immunity. *Id.* at \*11-12, 112 S.Ct. 286 (citing inter alia *Bluntt v. O'Connor*, 291 A.D.2d 106, 737 N.Y.S.2d 471 (4th Dep't), appeal denied, 98 N.Y.2d 605, 746 N.Y.S.2d 279, 773 N.E.2d 1017 (2002) ). Thus, defendant Ingram, as the attorney for CB would also be entitled to absolute immunity, and the complaint must be dismissed as against her.

### III. State Action

#### A. Legal Standards

To state a claim under section 1983, the plaintiff must allege both that the defendant has violated plaintiff's rights under either the Constitution or laws of the United States and that the defendant acted "under color of state law." *Rae v. City of Suffolk*, 693 F.Supp.2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at \*5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ). The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at \*2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) ).

Private conduct is simply beyond the reach of section 1983 " 'no matter how discriminatory or wrongful that conduct may be.' " *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) ). A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam). The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

Amato v. McGinty, Not Reported in Fed. Supp. (2017)
2017 WL 9487185

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 44 of 49

**B. Application**

Plaintiffs have sued Attorneys Andrew Gilday and Amy Ingram [7] as well as Patrick Bessmer and his girlfriend, Pamela Augustine. With respect to Attorneys Gilday and Ingram, it is well-established that private attorneys do not act under color of state law even if they are court-appointed attorneys, performing their traditional function as counsel. *See Harmon v. New York County Dist. Attorney's Office*, No. 13 Civ. 1711, 2014 WL 1044310, at *9 (S.D.N.Y. March 17, 2014) (citing inter alia *Brown v. Legal Aid Soc'y*, 367 Fed.Appx. 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ). *See also Licari v. Voog*, 374 Fed.Appx. 230, 231 (2d Cir. 2010) (private attorneys, even if they are court-appointed, and/or associated with a Legal Aid organization, do not act under color of state law when representing their clients). According to plaintiffs, defendant Gilday is the court-appointed attorney for defendant Bessmer, and defendant Ingram was appointed by the court as the attorney for CB.

[7]      As stated above, defendant Ingram is entitled to immunity. The lack of state action is an alternative basis for dismissal as against this defendant.

 *7 Defendants Bessmer (CB's father) and Augustine are clearly private parties who do not act under color of state law for purposes of section 1983. Although plaintiffs allege that Bessmer and Augustine "conspired" with other defendants, plaintiff states no facts to support these conclusory statements that are dispersed throughout the complaint. (Compl. ¶¶ 11, 12). Conclusory allegations of conspiracy are insufficient to state a claim under the civil rights laws. *See Brown*, 367 Fed.Appx. at 216 (color of state law may be established if the individual conspired with a state actor, however, conclusory allegations of conspiracy are insufficient). The only state actor is Judge McGinty, and there is no indication, other than the judge's decision in Bessmer's favor, how defendant Bessmer or defendant Augustine would have "conspired" with the judge sufficient to establish that they acted under color of state law. [8]

[8]      Plaintiff alleges that she was verbally and physically threatened by defendants Bessmer and Augustine outside the court, and that Judge McGinty only issued an order of protection for plaintiff Amato and not for CB. (Compl. ¶ 29). The alleged attack by Bessmer and Augustine was certainly a "private action," and the judge's failure to issue a protective order for CB is not alleged to have been the result of any "conspiracy."

Plaintiffs allege that defendants Gilday, Ingram, and Judge McGinty "co-conspired," violated her rights and placed CB in the custody of a dangerous criminal in violation of "Statute." (Compl. ¶ 22). "Merely resorting to the courts and being on the winning side of a lawsuit does not rise to the level of "conspiracy." " *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1988). Defendant Gilday was appointed to represent defendant Bessmer and had a duty to represent his interests in the custody proceeding. Defendant Ingram was appointed to protect the interests of CB during the proceedings. Plaintiff faults Attorney Ingram for being ill prepared, not returning plaintiff Amato's calls, and was generally an ineffective advocate for CB. Plaintiff claims that defendant Ingram also "fought vehemently" in favor of custody for defendant Bessmer (Compl. ¶ 26). Plaintiff also states that her "adversary," the judge, and the appointed child attorney "ganged up" on her. (Id.)

Defendant Ingram's alleged incompetence and the fact that the judge ultimately ruled in defendant Bessmer's favor does not indicate that the judge conspired with the attorneys regarding his ruling or that defendants Bessmer and Augustine somehow conspired with the judge to obtain a favorable result. Thus, the complaint may be dismissed in its entirety as against defendants Attorney Gilday, Attorney Ingram, Bessmer and Augustine.

## IV. Minor Child Plaintiffs

**A. Legal Standards**

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself. [9] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.

[9]      An limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case. An exception has also been established for parents representing their children in applications for Supplemental Security Income ("SSI"). *Machadio v. Apfel*, 276 F.3d 103, 106-07 (2d Cir. 2002). However, the interests of the child and the parent were "intertwined," and

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 45 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

the Social Security regulations provided for such representation.

**B. Application**

Plaintiff's have listed various "John" or "Jane" Doe minors as plaintiffs, including CB, plaintiff Amato's child. The adult plaintiffs have all signed the complaint and added their John or Jane Doe children under their names.[10] (Compl. CM/ECF pp. 27, 28, 32). However, while the adults may represent their own interests, they may not represent the interests of their children. *See Cheung v. Youth Orchestra Found. of Buffalo*, 906 F.2d 59, 61 (2d Cir. 1990) (a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child because the choice to appear pro se is not a true choice for minors who, under state law, cannot determine their own legal actions) (citing *Fed. R. Civ. P. 17(b)* ). The court in *Cheung* further stated that it is not in the interests of minors or incompetents that they be represented by non-attorneys. *Id.* "Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* Thus, the minor children may not be plaintiffs on their own because they are minors,[11] and the adult plaintiffs may not represent their children. *See also Armatas v. Maroulleti*, 484 Fed.Appx. 576 (2d Cir. 2012).

10    One plaintiff has attempted to sign the complaint herself as a "minor," with her "guardian" signing the complaint underneath the minor's name. (Compl. at CM/ECF p.32).

11    Fed. R. Civ. P. 17(e).

**\*8** The court would also point out that although all the adult plaintiffs have signed the complaint, they did not include their addresses. The only specific contact information is for plaintiff Amato. The complaint contains a description of the various plaintiffs and generally where they live,[12] but no specific addresses have been provided. (Compl. ¶¶ 3-7). Plaintiff Amato may not act on behalf of any of the other plaintiffs because she is not an attorney. This includes accepting mail from the court and sending it to the other plaintiffs. In any event, as discussed below, the adults, other than the plaintiff have no standing to bring this action.

12    Most of the plaintiffs live in New York State, but Michelle Arzola and her two "Doe" "children" live in Ohio. (Compl. ¶ 7).

**V. Standing**

**A. Legal Standards**

A plaintiff bears the burden of establishing that he or she has standing to bring an action in federal court. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). "To establish constitutional standing, a plaintiff must show (1) an injury in fact, (2) causation between the injury and the offensive conduct, and (3) 'a likelihood that the injury will be redressed by a favorable decision.' " *Heath v. Banks*, No. 16-3493-cv, slip. op. at 2 (2d Cir. June 5, 2017) (quoting *Susan B. Anthony List v. Driehous*, —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) ). In addition, there is a "prudential standing rule" which states that, normally litigants are barred from "asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Id.* (quoting *Rajamin v. Deutsche Bank Nat't Tr. Co.*, 757 F.3d 79, 86 (2014) ).

**B. Application**

In this case, plaintiff Amato has added other adult plaintiffs, including her mother, CB's Aunt and Uncle, and CB's adult cousin. None of these individuals are parties to the custody action, and it is unclear how family that lives in Ohio, (Compl. ¶ 7), would have standing to assert claims in this case. According to the prudential standing rule, the additional plaintiffs would be barred from asserting the legal interests of either plaintiff Amato or CB even if the other plaintiffs claimed that they are "injured" by any of the defendants' actions. Thus, the complaint may also be dismissed for lack of standing as against all plaintiffs other than plaintiff Amato and CB.

**VI. *Rooker-Feldman*, The Domestic Relations Exception, and *Younger v. Harris***

**A. The Domestic Relations Exception**

**1. Legal Standards**

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshal v. Marshall*, 547 U.S. 293, 308, 126 S.Ct. 1735, 164 L.Ed.2d 480 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which the federal courts lack." *Thomas v. N.Y. City*, 814 F.Supp. 1139, 1146 (E.D.N.Y. 1993).

Case 5:24-cv-01044-GTS-MJK   Document 6   Filed 09/16/24   Page 46 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)

2017 WL 9487185

In *Bukowski v. Spinner*, No. 17-CV-845, 2017 WL 1592578 (E.D.N.Y. Apr. 28, 2017), the District Court dismissed a fee-paid action, sua sponte which raised very similar claims to the case herein. In *Bukowski*, the plaintiff sought to challenge rulings made in an underlying state court child custody case, [13] naming the Judge, law guardian, and County Attorney, among other defendants. *Id.* Plaintiff in *Bukowski* criticized the Judge, stated that the law guardian was "not troubled" by the judge's actions, criticized the caseworkers, and claimed that she was subjected her to "unfounded" charges. *Id.* at *1.

[13]   One of the rulings granted sole custody to the father of the child. 2017 WL 1592578, at *1.

### 2. Application

**\*9** Plaintiffs in this case are making the same claims and challenging similar actions by the state court judge and the state court attorneys who appeared in plaintiff Amato's custody case. The plaintiff in *Bukowski* also raised "constitutional" issues, but the court recognized that the allegations essentially challenged a state domestic relations matter, and were therefore, outside the federal court's jurisdiction. 2017 WL 1592578, at *3 (citations omitted). A review of plaintiffs' request for relief in this case shows that they are essentially challenging the state court's action. In addition to substantial monetary damages, plaintiffs seek "immediate return" of CB, together with a judgment "declaring the orders, edicts, and processes described in this Complaint unconstitutional with an order permanently enjoining the enforcement of these orders." (Compl. at CM/ECF p. 26).

In order to return custody of CB to plaintiff, or to "enjoin" the state court's orders, this court would have to re-determine the judge's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992); *Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F.Supp.3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Thus, the case may be dismissed based on the domestic

relations exception. To the extent that the custody case has been concluded, the court will also discuss alternate bases for dismissal.

### B. *Rooker-Feldman*

#### 1. Legal Standards

A dismissal pursuant to the *Rooker Feldman* [14] doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 Fed.Appx. 16, 18 (2d Cir. 2013). This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999) ).

[14]   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414 17, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

There are four requirements to the application of *Rooker Feldman*: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff's injuries must have been caused by the state court judgment; (3) the plaintiff must be asking the federal court to review and reject the state court's judgment; and (4) the judgment must have been rendered prior to filing the federal court action. *Bukowski*, 2017 WL 1592578, at *3 (citing *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) ).

#### 2. Application

As Judge D'Agostino stated in her June 2, 2017 decision, under the *Rooker Feldman* doctrine, the district court also does not have subject matter jurisdiction over claims that effectively challenge state court judgments in general. (Dkt. No. 9) (quoting *Arena v. Dep't of Soc. Servs. of Nassau Cty.*, 216 F.Supp.2d 146, 151 (E.D.N.Y. 2002) ). Although it is unclear whether the plaintiff's custody case is finally decided because plaintiff claims that the Judge scheduled a proceeding

Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 47 of 49

Amato v. McGinty, Not Reported in Fed. Supp. (2017)
2017 WL 9487185

in "October" notwithstanding that the witnesses were ready to testify. [15] (Dkt. No. 8 at CM/ECF p.4). To the extent that plaintiff's custody case is terminated, or to the extent that plaintiff seeks review of decisions that the judge has already issued, this complaint is barred by *Rooker Feldman* because plaintiff is essentially challenging the state court's decision. Plaintiff lost in state court, her injuries are allegedly causes by the state court judgment that she seeks to overturn, plaintiff is asking this court to overturn Judge McGinty's rulings, and it appears that custody was awarded to Mr. Bessmer prior to plaintiff bringing this action. Thus, all the requirements for *Rooker Feldman* have been met with respect to orders that have already been issued by Judge McGinty.

[15]    Plaintiff Amato does allege that custody has already been awarded to defendant Bessmer.

### C. *Younger v. Harris* [16]

[16]    401 U.S. 37 (1971).

### 1. Legal Standards

**\*10**  In *Younger v. Harris*, the Supreme Court held that federal courts must abstain from exercising jurisdiction over claims, seeking declaratory or injunctive relief, that implicate ongoing state proceedings. 401 U.S. at 43-44. The Supreme Court held that when there is a parallel criminal proceeding in state court, the federal court must refrain from enjoining the state prosecution. *Id.* *Younger* abstention has been expanded to include state civil proceedings which are akin to criminal prosecutions [17] and state court proceedings which implicate a state's interest in enforcing the orders and judgments of its courts. [18] Until 2013, the abstention analysis involved determining (1) whether there was an ongoing state proceeding; (2) whether an important state interest was implicated; and (3) whether the plaintiff had an avenue open for review of constitutional claims in state court. *See Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Parent v. New York*, 485 Fed.Appx. 500, 503 (2d Cir. 2012) (quoting *Younger, supra; Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997) ).

[17]    *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975).

[18]    *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 134 S.Ct. 584, 588, 187 L.Ed.2d 505 (2013), the Court revisited the analysis required to invoke abstention under *Younger*. In *Sprint*, the Court rejected the three-part test in favor of a "categorical approach." *Mir v. Shah*, 569 Fed.Appx. 48, 51 (2d Cir. 2014) (citing *Sprint*, 134 S.Ct. at 591-94). *Younger* abstention is triggered only by three categories of state court proceedings: (1) state criminal prosecutions; (2) civil proceedings that are akin to criminal proceedings; and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* (quoting *Sprint*, 134 S.Ct. at 588). In *Sprint*, the Court used state-initiated custody proceedings in its analysis [19] as an example of civil proceedings which are akin to criminal proceedings. 134 S.Ct. at 592 (citing *Moore v. Sims*, 442 U.S. 415, 419–420, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated proceeding to gain custody of children allegedly abused by their parents) ). *See also Davis v. Baldwin*, 594 Fed.Appx. 49, 51 (2d Cir. 2015) (same).

[19]    *Sprint* did not involve custody proceedings.

"If the federal court action falls into one of the three categories listed above, the court may then consider additional factors, such as "whether the state interest is vital and whether the state proceeding affords an adequate opportunity to raise the constitutional claims." " *Torres v. Gaines*, 130 F.Supp.3d 630, 636 (D. Conn. 2015). In Judge D'Agostino's decision, she stated that "several courts in the Circuit have held that *Younger* abstention applies in similar circumstances as this case." (Dkt. No. 9 at 5) (citing *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 456 S.W.3d 545, 2015 WL 1120121, at \*2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) ).

In *Graham*, the court stated that " 'there can be no doubt that a custody dispute ... raises important state interests.' " 2015 WL 1120121, at \*3, 456 S.W.3d 545 (quoting *Reinhardt v. Com. of Mass. Dep't of Social Servs.*, 715 F.Supp. 1253, 1256 (S.D.N.Y. 1989) ). In addition, the court held that plaintiff was able to raise any potential constitutional claims in state court. *Id.* Therefore, the court applied *Younger* to dismiss plaintiff's claims for injunctive relief. The same is true in this action to the extent that any of the issues upon which plaintiffs base their action are still pending or are to be tried in the

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**
Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 48 of 49
2017 WL 9487185

future. [20] In fact, plaintiff Amato has cited a quote from a letter, signed by Judge McGinty, telling plaintiff Amato that, if she is unhappy with the court's decision, her recourse is an appeal of that decision. [21] (Compl. ¶ 41).

[20]   *Younger* does not apply to monetary damages, thus, the dismissal of plaintiff's damage claims would be governed by the domestic relations exception and not *Younger*.

[21]   The letter is referring to a "decision" from 2016. It is unclear what that decision may have been or whether it was the judge's actual custody decision.

## VII. <u>Opportunity to Amend</u>

### A. Legal Standards

**\*11**  Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B. Application

Because Judge McGinty and Attorney Ingram are entitled to absolute immunity, it would be futile to allow the plaintiffs to amend their complaint. No amendment will cure this deficiency. Defendant Gilday does not act under color of state law, and plaintiffs have made no sufficient allegations of a conspiracy with Judge McGinty that would be sufficient to establish state action by defendant Gilday. Thus, the court also recommends that no amendment be allowed. Defendants Bessmer and Augustine also do not act under color of state law, and defendant Bessmer is simply plaintiff Amato's adversary in the custody dispute. Defendant Augustine does not appear to be involved in the litigation at all. Thus, no amendment would change this court's recommendation with respect to defendants Bessmer and Augustine.

The court notes that, as stated above, in two of the paragraphs of her complaint, plaintiff appears to state that New York Domestic Relations Law §§ 236 and 240 are "unconstitutional," but her reasoning for this allegations is completely unclear. (Compl. ¶ 36). While plaintiff Amato

might in certain circumstances be entitled to challenge the constitutionality of laws as they applied to her without running afoul of the domestic relations exception, *Younger*, or *Rooker Feldman*, the other plaintiff's do not have standing to assert this claim because the laws have not been applied to them, and plaintiff Amato has not named any defendants that would be able to afford her the relief that she seeks with respect to the sections of the law that she appears to challenge. In addition, it is likely that even a proper challenge to the statute would have to be brought first in state court. *See Kahn, supra.* The court also points out that this claim does not appear in plaintiff's "relief" section. Thus, the court will recommend dismissing this claim without prejudice to filing an amended complaint with only plaintiff Amato as the plaintiff, against the proper defendant, at the proper time, and in the appropriate forum. [22]

[22]   Although plaintiff also mentions the Family Court Act in paragraph 36 of her complaint, she does not indicate which sections of the Act she believes to be unconstitutional.

## VIII. <u>Motion to Obtain ECF Login and Password</u>

Because this court is recommending dismissal at this time, the court will deny plaintiff's motion to obtain ECF privileges without prejudice.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiffs' complaint be dismissed in its entirety **WITH PREJUDICE** as against defendants McGinty, Ingram, Gilday, Bessmer, and Augustine, and it is

**RECOMMENDED**, that plaintiff Amato's complaint be dismissed **WITHOUT PREJUDICE** only with respect to any claim challenging the constitutionality of New York Domestic Relations Law, and only against the proper defendant for such challenge, at the proper time for such challenge, and in the proper forum, as discussed above, and it is

**\*12  ORDERED**, that plaintiff Amato's motion to obtain ECF privileges (Dkt. No. 10) is **DENIED**, and it is

**ORDERED**, that the Clerk serve a copy of this order on plaintiffs to the extent that addresses are available.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written

**Amato v. McGinty, Not Reported in Fed. Supp. (2017)**
Case 5:24-cv-01044-GTS-MJK    Document 6    Filed 09/16/24    Page 49 of 49

2017 WL 9487185

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993)*(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 9487185

---

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.